**UNITED STATES of America**

v.

**Emanuel M. BROWN.**

**Crim. No. 75-124.**

United States District Court,
E. D. Pennsylvania.

July 21, 1976.

Louis Ruch, Asst. U.S. Atty., Philadelphia, Pa., for U. S.

John L. Rolfe, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.

This memorandum explains our dismissal without a hearing of the defendant Emanuel Brown's second motion under Fed.R. Crim.P. 33 for a new trial on the grounds of newly discovered evidence. As was the first, this motion is based on a purported recantation by the defendant's younger brother, Calvin Brown, a key witness against him at the jury trial for bank rob-

bery at which he was convicted.[1] After the verdict but before sentencing, Calvin Brown telephoned Neil Jokelson, Esquire, Emanuel Brown's original and able trial counsel. With Calvin Brown's consent, Mr. Jokelson tape recorded the call, in which Calvin declared that his brother had no part in the bank robbery. Mr. Jokelson then moved on Emanuel Brown's behalf for a new trial, and we granted a hearing.[2] During that hearing, Calvin Brown repudiated his recantation, testifying that the telephone call during which it had been made was initiated by the defendant himself while the two of them, contrary to our express order, were temporarily incarcerated at the New York Metropolitan Correctional Center and permitted to visit with one another there. After hearing the testimony, including the tape recording, we made oral findings and conclusions. We credited Calvin Brown's original trial testimony and his repudiation of the recantation; concomitantly, we disbelieved the recantation. Accordingly, we denied the motion for new trial on its merits. In due course, we proceeded to sentence. Our denial of the motion was raised as a primary issue on appeal, but the judgment of conviction was summarily affirmed by order of the Third Circuit. No. 75–2418 (April 23, 1976).

The new purported recantation takes the form of a series of four letters from Calvin Brown to the court, the prosecutor, and his attorney. Three of them (two dated January 16, 1976, and one dated January 21, 1976) are identical in language and were

---

1. Calvin Brown, who had pleaded guilty and was awaiting sentence on this and other robberies, testified that the defendant masterminded the crime, drafted the demand note, supplied the gun, chose and "cased" the bank, and provided the transportation from Philadelphia to suburban Bryn Mawr, the site of the robbery. This evidence was corroborated, *inter alia*, by FBI handwriting and fingerprint experts, who testified that the demand note was written by the defendant and that his fingerprints were on it. The defendant sought to discredit this evidence and also relied on an alibi, which the jury either disbelieved or else found not truly inconsistent with guilt.

2. Because he was an important witness on the motion for new trial, we granted Mr. Jokelson's motion to withdraw his appearance and appointed John Rolfe, Esquire, to represent the defendant from that time forward. Mr. Rolfe also handled the sentencing and took the defendant's unsuccessful appeal. John Rogers Carroll, Esquire, who was appointed counsel for Calvin Brown in another case, graciously agreed to represent him as a witness in the proceedings before us.

mailed from Lewisburg Penitentiary.[3] The fourth, sent only to the attorney and dated February 9, 1976, is shorter, apparently subscribed under oath, and mailed from Atlanta Penitentiary. All of Calvin Brown's letters deny that the defendant had any part in planning or assisting him in robbing any banks, as did the telephone call which underlay the first motion for a new trial. The fourth letter adds: "[I] got [the gun] from a friend of mine, as well as the transportation to and from the bank." The letters are otherwise completely lacking in corroborative detail.

■ We find no guidance in Rule 33 nor in any case decided thereunder as to how a court ought to treat successive motions for a new trial raising the same issue previously asserted, albeit on different "new" evidence (here, a new recantation).[4] We perceive a threshold question whether this second motion should be *dismissed* on the basis that it has been previously determined or that it constitutes an abuse of the Rule, rather than considered on its merits. (If we did not dismiss, but rather treated the motion on its merits, there would still be the preliminary question whether a hearing ought to be granted.) In *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the Supreme Court formulated "basic rules to guide the lower

federal courts," *id.* at 15, 83 S.Ct. at 1077, when considering dismissal of second and successive motions to vacate sentence under 28 U.S.C. § 2255. We see no reason why those rules should not also apply here.[5]

■ Speaking for the *Sanders* Court, Mr. Justice Brennan wrote:

Controlling weight may be given to denial of a prior application for . . . relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

373 U.S. at 15, 83 S.Ct. at 1077 (footnote omitted).[6] As discussed above, our prior determination was on the merits. The second factor is thus quickly disposed of. The first factor requires somewhat more explanation. Justice Brennan defined a "ground" as "a sufficient legal basis for granting the relief," *id.* at 16, 83 S.Ct. at 1077, pointing out that the later assertion of new facts does not make a new "ground." Here the legal "ground" of both motions is the same: newly discovered evidence in the form of the key government witness's purported admission that he testified falsely at trial. Although the first two

**3.** The defendant has been continuously incarcerated at Lewisburg since December 6, 1975. If, as it appears, his brother was also there in mid-January, the Bureau of Prisons again violated our order to keep the two separated. We have no way of knowing, of course, whether the defendant and his brother were in actual contact at Lewisburg in January, and we express no opinion whether the second spate of letters may have been initiated by the defendant's urgings, as we found the initial recantation telephone call to have been.

**4.** Cf. Saunders v. United States, 89 U.S.App. D.C. 291, 192 F.2d 409 (1952). Neither side filed a memorandum of law supporting or opposing the motion as required by Local Criminal Rule 14.

**5.** Section 2255 is the complete statutory equivalent of habeas corpus for federal prisoners and may not be limited without violating the Constitution's Suspension Clause, Art. I, § 9, cl. 2. *See United States v. Hayman*, 342 U.S. 205,

72 S.Ct. 263, 96 L.Ed. 232 (1952). Thus, if the *Sanders* rules are appropriate guides to the exercise of judicial discretion in dismissing an application for a Constitutionally-protected remedy such as § 2255 relief, they are surely not too strict as applied to the non-Constitutional, indeed disfavored, motion for a new trial. *Cf.* 8A Moore's Federal Practice ¶ 33.-02[3], at 33–8 to 33–9 (Waxner & Taylor eds. 1975).

**6.** The other basis for dismissal of successive petitions which the Court authorized in *Sanders* is "Abuse of the Remedy." 373 U.S. at 17–18, 83 S.Ct. 1068. Essentially relating to prior deliberate withholding or abandonment of alternative grounds and other patently inequitable conduct, we think this principle has no application here. In any event, the burden of raising and proving this basis for dismissal is on the government, which has not asserted it here. *Id.* at 10–11, 17, 83 S.Ct. 1068.

requisites of a dismissal are thus met, we would still be required to reach the merits if the defendant showed "that the ends of justice would be served by permitting the redetermination of the ground." *Id.* For example, the Court noted, such a showing might be based on the unfairness of the first hearing, or on an intervening change of law. We also think this factor could be satisfied by a showing of significant, different, particularized, newly discovered facts. This the defendant has not done. The only difference in this second "recantation" from that which the witness formerly repudiated and which we refused to credit is the assertion that his unseen associate in the robbery was not his brother but "a friend." Surely, this is not enough.

The defendant's burden to claim our belief and hence relief based on a recantation, heavy to begin with,[7] grows heavier each time the recantation is repudiated and a new one substituted.[8] Nothing in the second recantation, in the light of all the circumstances and history of this case, induces belief, and the defendant's second motion for a new trial will accordingly be dismissed.[9]

An appropriate order follows.

---

**7.** 8A Moore's ¶ 33.05, *supra* note 5, at 33–38 to 33–41; 2 C. Wright, Federal Practice and Procedure § 557, at 527–28 (1969); *see United States v. Bujese,* 371 F.2d 120 (3d Cir. 1967); *United States v. Brewer,* 360 F.2d 112 (3d Cir. 1966); *United States v. Rutkin,* 208 F.2d 647 (3d Cir. 1953).

**8.** *Cf. Lindsey v. United States,* 368 F.2d 633 (9th Cir. 1966), *cert. denied,* 386 U.S. 1025, 87 S.Ct. 1383, 18 L.Ed.2d 465 (1967) (multiple recantations and repudiations result in evidence's being "merely impeaching" rather than material and substantive; thus insufficient under Rule 33).

**9.** Even if we treated this motion on its merits, we would, in the exercise of our discretion, deny it without a hearing for essentially the same reasons stated above.