UNITED STATES, Appellee,

v.

James M. BROOKS, Staff Sergeant,
U.S. Marine Corps, Appellant.

No. 97–0390.
Crim.App. No. 95–1182.

U.S. Court of Appeals for
the Armed Forces.

Submitted Sept. 18, 1997.

Decided Sept. 22, 1998.

For Appellant: *Lieutenant Commander Eric C. Price*, JAGC, USN.

For Appellee: *Colonel Charles Wm. Dorman*, USMC, and *Major R.W. Koeneke*, USMC.

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, pursuant to his pleas, of wrongfully using marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Contrary to his pleas, appellant was convicted of conspiring to distribute methamphetamine, dereliction of duty by failing to properly conduct urinalysis testing, and wrongfully possessing marijuana, in violation of Articles 81, 92, and 112a, UCMJ, 10 USC §§ 881, 892, and 912a, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 54 months, forfeiture of $700.00 pay per month for 54 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence and denied a petition for new trial.

Our Court granted review of the following issues:

I. WHETHER THE LOWER COURT ERRED WHEN IT PERFUNCTORILY RESOLVED A CRITICAL QUESTION OF FACT CONTRARY TO THE ONLY SWORN STATEMENT OF RECORD AND THEN COMPOUNDED THIS ERROR WHEN IT REFUSED TO RECONSIDER THIS CRITICAL FACTUAL QUESTION IN LIGHT OF A DISPOSITIVE AFFIDAVIT.

II. WHETHER APPELLANT WAS DEPRIVED OF A FAIR TRIAL WHEN THE TRIAL COUNSEL IMPROPERLY THREATENED TO VACATE THE SUSPENDED PORTION OF CONFINEMENT OF A PROSPECTIVE DEFENSE WITNESS'S SENTENCE IF THAT PROSPECTIVE DEFENSE WITNESS TESTIFIED AT APPELLANT'S TRIAL, THUS CONSTITUTING PROSECUTORIAL MISCONDUCT AND UNLAWFUL COMMAND INFLUENCE.

## Facts

The granted issues and the petition for new trial considered by the court below relate only to the conspiracy. The theory of the prosecution was that appellant agreed to act as an intermediary between the seller and buyers. The intended "buyers" were two female undercover agents. The overt act alleged was that he "did go to the Holiday Garden Apartments in the city of Tustin, California," to facilitate a purchase of methamphetamine. The theory of the defense was mistaken identity: that appellant was not at the Holiday Garden Apartments when the transaction took place.

The prosecution evidence was that the two undercover agents approached Private First Class (PFC) Burroughs, the person whose affidavit was the basis for the petition for new trial, seeking drugs. Burroughs introduced the agents to Lance Corporal (LCpl) Tucker. Tucker contacted appellant, who agreed to arrange the deal. At this point, according to the prosecution's theory, the conspiracy was formed.

Tucker testified that, on June 16, 1993, he and Burroughs drove to the intended site of the drug sale, the Holiday Garden Apartments, in one car, followed by the two undercover agents in their car. They were followed by three surveillance vehicles, "leapfrogging" so that different agents were watching the undercover agents at different times. Special Agent (SA) Pollock was behind the undercover agents in a third car as they approached the apartments.

Tucker testified that he met with appellant at the Holiday Garden Apartments. The two undercover agents and SA Pollock identified appellant as the person who met Tucker. The two undercover agents testified that appellant was standing on the street corner, waving at Tucker, Burroughs, and them, and directing them toward parking spaces. SA Pollock also identified appellant from a photographic lineup. In addition, SA Pollock spotted appellant's family car near the scene and determined from a license plate check that it was registered to appellant's wife.

Appellant testified and denied that he was at the apartments on June 16.

Tucker testified that he and appellant went inside the building to an apartment, where they met with a man named "Brian" and one or two others whom Tucker did not identify. Tucker testified that appellant asked Brian "if he had it." Brian handed a plastic snuff container to appellant. Appellant opened the container and handed Tucker a plastic bag, which Tucker believed contained methamphetamine. Tucker left the apartment and gave the plastic bag to one of the undercover agents. The drugs were represented as methamphetamine but actually were ephedrine, which is not a controlled substance.

At trial the prosecution introduced appellant's statement, in which he admitted being a heavy marijuana user. He denied being a dealer. His statement recites:

> PFC Burroughs, LCpl Tucker, Pvt Burns, and PFC Wallace have all approached me and tried to buy narcotics. I did not deal to them, I told them where they could get there [sic] narcotics. I introduced them to where they could buy there [sic] dope, but I did not deal to them.

Trial counsel argued that, in this statement, appellant admitted being an intermediary for drugs.

The prosecution also introduced an audiotape of a telephone conversation between Tucker and appellant, where Tucker tried to arrange a second transaction. The conversation is laced with drug culture expressions and is difficult to understand. The prosecution's interpretation of the conversation was as follows:

> They talked about Helen and Cathy, the two people they had dealt to before. The statement says, "She wants to see if we can do it tomorrow." Cathy wants to see if we can do it tomorrow. Helen wants to see if we can do it tomorrow, another deal. "Those girls are back." The girls from June 16th, Helen and Cathy, they're back. They want more methamphetamine. "Can you help me again?" The same thing is happening—the accused believes the same thing happened on 29 July as was happening on the 15th of June—setting up a deal with Tucker to deal to Helen and Cathy.

Burroughs's court-martial was on November 1, 1993, well before appellant's, which began on December 22, 1993. Burroughs pleaded guilty pursuant to a pretrial agreement that required him to testify truthfully in appellant's case, as well as others. He was interviewed by Naval Criminal Investigative Service (NCIS) agents on the same day as his trial and told the NCIS agents that he did not see appellant at the apartments. On November 22, 1993, Captain (Capt) Lewandowski, who was the trial counsel in Burroughs' court-martial, as well as a trial counsel in appellant's case, sent a letter to the convening authority recommending that a hearing be convened under Article 72, UCMJ, 10 USC § 872, and RCM 1109, Manual for Courts–Martial, United States (1995 ed.), to determine if Burroughs had breached his pretrial agreement. Concerned that Burroughs would lose the benefit of his pretrial agreement, Burroughs' defense counsel notified the staff judge advocate on March 25, 1994, that Burroughs "has not refused to cooperate," but that "he is unable to recall seeing SSgt Brooks" at the apartments.

Appellant's defense counsel decided to not call Burroughs as a witness. On March 10 and 30, 1995, appellant's defense counsel asserted in RCM 1106 submissions to the convening authority that, as a result of government threats, Burroughs was not called as a defense witness because, based on their pretrial interview, "his testimony was simply incredible based on his demeanor, attitude, aloofness, inability to recall and almost hostile attitude towards us." The post-trial submission also included an affidavit from Burroughs, dated March 30, 1995, asserting that he would have testified that he did not see appellant at the apartments.

Having been unsuccessful in persuading the convening authority to order a rehearing, appellant filed a petition for new trial with the Judge Advocate General of the Navy, who referred it to the Court of Criminal Appeals, in accordance with RCM 1210(e). Appellant also filed an extensive assignment of errors with the Court of Criminal Appeals, including allegations of prosecutorial misconduct and unlawful command influence which are identical to Granted Issue II. The basis for the allegations was, again, Burroughs' affidavit. After hearing oral argument, the court below denied the petition for new trial and rejected as meritless appellant's assertions of prosecutorial misconduct and unlawful command influence. The court reasoned as follows:

> We have closely considered the post-trial statements by Burroughs, the prosecutor who allegedly threatened him, and Burroughs' defense counsel. We are convinced that no such threat was made. It is clear that after Burroughs made his statement to NCIS, the prosecutor in that case, who also was one of the two prosecutors in the appellant's case, believed that Burroughs was being less than truthful and helpful. That prosecutor, however, did not talk to Burroughs. Instead, the prosecutor advised Burroughs' defense counsel of his concern and made Burroughs available to discuss the issue with his lawyer. That defense counsel indicated to Burroughs' convening authority that Burroughs was not denying that the appellant was at the drug sale site. Instead, she indicated that

> Burroughs was merely indicating that he did not see the appellant because he did not leave the parking lot. We find no evidence that the prosecutor directly or indirectly threatened Burroughs.

Unpub. op. at 4–5.

Almost a month after the court below released its opinion, Burroughs submitted a second affidavit which focused on the court's statement that Capt Lewandowski "did not talk to Burroughs." This time, Burroughs claimed that he and Capt Lewandowski were alone in a room and that the prosecutor, speaking in "a normal tone," told Burroughs that he thought he had lied in his statement to NCIS, that "he wanted me to tell the truth, and that the truth was that SSgt Brooks was at the Holiday Garden Apartments on that day." The affidavit further recites that Burroughs told Capt Lewandowski that "he hadn't seen SSgt Brooks there on that day" and that Capt Lewandowski told Burroughs that if he "testified for the defense at SSgt Brooks' trial or in accordance with the statement that [he] had provided NCIS that the Government would dishonor the maximum sentence protection provided for in [the] pretrial agreement." Burroughs states that his defense counsel told him that the Government would be required to hold a hearing before abrogating the pretrial agreement. Burroughs states that he "was scared that [he] would have to serve the extra 16 months if [he] testified for SSgt Brooks." Finally, Burroughs states that he did not tell appellant's defense counsel about the threat to abrogate the pretrial agreement. He concludes by saying, "I believed I was going to be called to testify and I was scared that I would lose the protection of my pretrial agreement." Burroughs' second affidavit was submitted to the Court of Criminal Appeals by a "Motion to Attach Document." The court denied the motion to attach and, thus, did not consider the second affidavit on its merits.

Both of Burroughs' affidavits recite that the threat was to abrogate the pretrial agreement if he testified for the defense *or* in accordance with his NCIS statement. The petition for new trial submitted to the convening authority, as well as the petition sub-

mitted to the court below, recites that the threat was to abrogate the agreement if Burroughs testified for the defense *and* in accordance with his NCIS statement. The parties appear to agree that if Burroughs had testified it would have been substantially in accord with his statement to NCIS.

### The Law

Article 73, UCMJ, 10 USC § 873, allows an accused to petition for a new trial "on the grounds of newly discovered evidence or fraud on the court." RCM 1210(f)(2) provides:

> A new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that:
>
> (A) The evidence was discovered after the trial;
>
> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
>
> (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

RCM 1210 is generally consistent with Fed.R.Crim.P. 33. *See* Drafters' Analysis of RCM 1210, Manual, *supra* at A21–88. Subsection (f) is also based on *United States v. Bacon*, 12 MJ 489 (CMA 1982), and *United States v. Thomas*, 11 MJ 135 (CMA 1981). *Id. Thomas* quotes *United States v. Chadd*, 13 USCMA 438, 32 CMR 438 (1963), in which the criteria set out in RCM 1210(f) were adopted.

■ Petitions for new trial "are generally disfavored." *United States v. Williams*, 37 MJ 352, 356 (CMA 1993). They should be granted "only if a manifest injustice would result absent a new trial ... based on proffered newly discovered evidence." *Id.*

Petitions for new trial do not proceed up the usual appellate chain. Instead, they are submitted to the Judge Advocate General. RCM 1210(a). The Judge Advocate General acts on the petition, unless the case is pending before an appellate court, in which case he refers it to the court where the case is pending. RCM 1210(e).

■ *Bacon* set out the standard for ruling on a petition for new trial. In *Bacon*, this Court held that "the determination of sufficient grounds for granting a petition for new trial in the military rests 'within the [sound] discretion of the authority considering ... [that] petition.' " 12 MJ at 492 (citations omitted). When a petition for new trial is considered by a Court of Military Review (now Court of Criminal Appeals), "the Courts of Military Review have the 'prerogative' of weighing 'testimony at trial against the' post-trial evidence 'to determine which is credible.' " The Courts of Criminal Appeals "are free to exercise ... [t]heir factfinding powers." The only limit on their factfinding powers is that their "broad discretion must not be abused." *Id.*

Congress intended that military practice with respect to petitions for new trial mirror practice in federal civilian courts. *Williams*, 37 MJ at 356 n. 3. In federal practice, "[t]he evidence which serves as the basis for such a motion [for a new trial] may be judged by the reviewing body both in terms 'of credibility as well as of materiality.' " *Bacon*, 12 MJ at 492, quoting *Jones v. United States*, 279 F.2d 433, 436 (4th Cir.1960), *cert. denied*, 364 U.S. 893, 81 S.Ct. 226, 5 L.Ed.2d 190 (1960), and citing *United States v. Maddox*, 444 F.2d 148, 152 (2d Cir.1971), and *United States v. Gantt*, 298 F.2d 21 (4th Cir.1962). In federal civilian practice, "[g]enerally, a motion for new trial may be decided upon affidavits without evidentiary hearings." *United States v. Metz*, 652 F.2d 478, 481 (5th Cir. 1981); *accord United States v. Montilla–Rivera*, 115 F.3d 1060 (1st Cir.1997); *United States v. Green*, 89 F.3d 657 (9th Cir.1996); *United States v. Johnson*, 12 F.3d 827 (8th Cir.1994); *United States v. Blackburn*, 9 F.3d 353 (5th Cir.1993); *United States v. Hedman*, 655 F.2d 813 (7th Cir.1981); *United States v. Herman*, 614 F.2d 369 (3d Cir. 1980); *United States v. Turner*, 490 F.Supp. 583 (E.D.Mich.1979).

■ Finally, "[p]ost-trial attempts by co-actors to exonerate one or the other should be viewed with extreme suspicion.... Peti-

tions for new trial should be denied where post-trial attempts to exculpate the petitioner appear 'contrived.' In these situations, such attempts should simply be deemed unworthy of belief and rejected." *Bacon*, 12 MJ at 492 (citations omitted).

When presented with a petition for new trial, the reviewing court must make a credibility determination, insofar as it must determine whether the "newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused." RCM 1210(f)(2)(C). The reviewing court does not determine whether the proffered evidence is true; nor does it determine the historical facts. It merely decides if the evidence is sufficiently believable to make a more favorable result probable.

In federal civilian practice, motions for new trial based on governmental misconduct appear to be treated differently than others. *See Turner*, 490 F.Supp. at 600. Whether to order a factfinding hearing in such cases is still a matter of judicial discretion. *See United States v. Nace*, 561 F.2d 763, 772 (9th Cir.1977). An evidentiary hearing may be necessary in some cases to develop an adequate record. *See United States v. Espinosa–Hernandez*, 918 F.2d 911 (11th Cir.1990); *United States v. Disston*, 582 F.2d 1108, 1110–12 (7th Cir.1978); *United States v. Hamilton*, 559 F.2d 1370, 1373 (5th Cir.1977); *United States v. Provenzano*, 521 F.Supp. 403 (D.N.J.1981); *United States v. Turner*, *supra*. Military practice, like federal civilian practice, makes an evidentiary hearing discretionary. RCM 1210(g) provides:

> The authority considering the petition may cause such additional investigation to be made and such additional information to be secured as that authority believes appropriate.

Because Burroughs' second statement was filed after the court below rejected the assignment of error and petition for new trial, we have evaluated it as a second petition for new trial. There is no guidance in RCM 1210 or Fed.R.Crim.P. 33 for treating successive petitions. The approach used in *United States v. Brown*, 417 F.Supp. 340 (E.D.Pa.1976), is persuasive. In *Brown*, the court adopted the procedure formulated by the Supreme Court in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), for successive *habeas corpus* petitions. Under the *Sanders* formula, a petition for new trial may be denied if:

> (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application;
>
> (2) the prior determination was on the merits; and
>
> (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Id.* at 15, 83 S.Ct. 1068.

In *United States v. Sztuka*, 43 MJ 261 (1995), this Court reaffirmed the highly deferential standard of review of decisions on petitions for new trial: clear abuse of discretion.

### Discussion

Appellant did not specifically challenge the decision of the court below on his petition for new trial, but the two granted issues are bound up with and closely related to the petition for new trial. The issues arise in this case from a tactical decision by the defense not to call a witness who asserts that he was able and willing to testify, and a post-trial discovery of evidence of government intimidation. This case does not involve a recanting witness or hearsay testimony, as we had in *United States v. Giambra*, 33 MJ 331 (CMA 1991). Even in *Giambra*, after the factfinding hearing was conducted, this Court explained:

> The limited hearing into the purported recantation that the Court ordered there was not for the purpose of resolving the new trial petition; rather, it was for the purpose of resolving a matter that would be a factor in our ultimate determination of the question of prejudice emanating from the hearsay error.

38 MJ 240, 241 (1993).

Three issues were presented by appellant's petition for new trial. First, was the evi-

dence of alleged government coercion "newly discovered" and not such that it would have been discovered by due diligence? Second, is it probable that Burroughs' testimony, both about his failure to see appellant at the site of the drug sale and about alleged government coercion, "would have produced a substantially more favorable result for the accused?" Third, did the Court of Criminal Appeals clearly abuse its discretion by denying appellant's motion to file the second affidavit from Burroughs?

In this case, the Court of Criminal Appeals did not address the "newly discovered" and "due diligence" aspects of the evidence. It apparently assumed that the evidence of government coercion was newly discovered. Any error in this regard worked in appellant's favor.

The evidence before the court below was undisputed that, on the day of his own court-martial, Burroughs told the NCIS that he did not see appellant at the site of the transaction. It was also undisputed that the Government believed that Burroughs was lying, that the Government threatened to abrogate the pretrial agreement if Burroughs persisted in saying that he did not see appellant, that the defense interviewed Burroughs before trial and decided not to call him as a witness because of his hostile and uncooperative demeanor, that appellant's defense counsel attributed Burroughs' attitude to government intimidation, and that, in spite of any intimidation, Burroughs remained willing to testify.

There was no conflicting evidence until the defense submitted Burroughs' second affidavit asserting that Capt Lewandowski had personally confronted Burroughs. The court below made no finding of fact on this issue but merely denied the motion to file the document. One of the questions involved in this case is whether the court below abused its discretion by rejecting the document.

On the question of government intimidation, the operative fact of governmental threats to abrogate the pretrial agreement was uncontested. However, there appears to be a factual dispute whether Capt Lewandowski informed Burroughs of the Government's intentions face-to-face or through counsel. Burroughs concedes that his own counsel advised him of his due process rights under Article 72. Burroughs' second affidavit does not allege abusive behavior or physical intimidation by Capt Lewandowski. To the contrary, Burroughs describes a calm conversation in a normal tone of voice. Furthermore, he asserts that he remained willing to testify, in spite of his fear of losing the benefit of his pretrial agreement.

What is missing from the opinion below is an analysis of the evidence under the criteria of RCM 1210(f)(2). The question left unanswered by the court below is whether Burroughs' testimony and the evidence of government intimidation "would probably produce a substantially more favorable result for the accused." RCM 1210(f)(2)(C). We hold that the court below erred by failing to apply the correct legal standard to the evidence.

Accordingly, because the court below did not evaluate the evidence under the criteria of RCM 1210(f)(2), a remand is necessary. Specifically, the court below should consider whether the evidence of government intimidation was newly discovered and whether it would have been discovered by due diligence. The court also should determine whether the post-trial affidavits raise any material issues of fact that must be resolved by a factfinding hearing under the criteria set out in *United States v. Ginn*, 47 MJ 236 (1997). The court should then determine whether Burroughs' testimony that he did not see appellant, as well as any evidence of governmental intimidation, "would probably produce a substantially more favorable result for the accused."

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Criminal Appeals to determine whether a factfinding hearing is required under *United States v. Ginn, supra*, and for reconsideration of the petition for

new trial under RCM 1210. Thereafter, Article 67, UCMJ, 10 USC § 867 (1994), will apply.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and EFFRON concur.