EFFRON, Chief Judge
(dissenting):
Post-trial information concerning an expert forensic witness for the prosecution at Appellant’s court-martial revealed that the expert had been suspended from his Government position as a forensic examiner. This suspension, which ultimately led to the expert’s resignation, resulted from a Government investigation conducted several years after Appellant’s trial that demonstrated misconduct and deficiencies in the performance of his forensic duties sufficient to warrant disciplinary action. The case before us addresses the impact of the post-trial information on the validity of Appellant’s conviction.
1. Background
The Navy charged Appellant, a hospital corpsman, with indecent assault of a patient, Seaman Recruit TN. The parties agreed at trial as to the underlying circumstances leading up to the charged offense. In the course of his duties, Appellant had examined Fireman A, who was involved in a sexual relationship with Seaman Recruit TN, to address the possibility that Fireman A was afflicted with a sexually transmitted disease. The sexual relationship between Seaman Recruit TN and Fireman A violated a shipboard order prohibiting dating among shipmates. Following the examination of Fireman A, Seaman Recruit TN visited the medical facility as well.
2. The testimony of the complainant and Appellant
The parties at trial offered substantially different versions as to what happened next. Seaman Recruit TN testified that Appellant examined her to determine whether she had a sexually transmitted disease, and sexually assaulted her during the course of the exami *325 nation. Appellant, who denied the allegation, testified that Seaman Recruit TN visited the medical spaces after his examination of Fireman A. He stated that she was upset and agitated, and soon left the area. He also stated that he did not conduct a medical examination of Seaman Recruit TN and did not otherwise touch her in an inappropriate manner.
3. The opposing theories of the case
At trial, the two parties presented diametrically opposed theories of the case. According to the prosecution, Appellant took advantage of Seaman Recruit TN’s vulnerability and manipulated the circumstances to transform a medical examination into an opportunity for sexual gratification. According to the defense, Seaman Recruit TN and her boyfriend, Fireman A, feared that Appellant would disclose their prohibited relationship, and concocted the charges to divert attention from their own misconduct.
4. Expert testimony
The case did not involve any third party eyewitnesses to the charged misconduct. Each party presented circumstantial evidence supporting that party’s theory of the case, as well as circumstantial evidence countering the theory of the opposing party.
The prosecution offered expert testimony from two Government employees on the results of DNA testing of both bedding from the medical compartment and undergarments identified by Seaman Recruit TN as those worn by her at the time of the charged incident. Phillip Mills, a forensic chemist at the United States Army Criminal Investigative Laboratory (USACIL), testified about his serology examination of the bedding and articles of clothing. His testimony described his handling of the physical evidence, the nature of the tests he performed, and his identification of stains indicating the presence of bodily fluids.
Mills testified that he transmitted the stains to another USACIL employee, Marilyn Chase, for DNA analysis. Chase testified about her DNA examination, and expressed her conclusion that the testing indicated that the stains transmitted by Mills showed the presence of DNA consistent with that of Appellant’s DNA.
5. The court-martial findings and initial review
The court-martial found Appellant guilty of the charged indecent assaults. On February 22, 1999, the court-martial adjudged a sentence that included confinement for two years and a bad-conduct discharge.
The case was docketed at the Navy-Marine Corps Court of Criminal Appeals on May 8, 2000. The Court of Criminal Appeals completed its review on September 28, 2004, at which time it affirmed the findings and sentence.
6. Forensic misconduct
Appellant subsequently filed an appeal with our Court. While that appeal was pending, USACIL issued a memorandum on August 25, 2005, alerting all staff judge advocates that a USACIL DNA examiner had been suspended “after permitting contamination in his testing process.”
In a subsequent memorandum, issued on October 17, 2005, USACIL identified the examiner as Phillip Mills, and listed a number of problems with his work, including incidents in which he “cross-contaminated and/or switched samples,” “altered documentary evidence,” “entered false data regarding a control sample,” “admitted to making a false data entry and creating a false document,” and “misrepresented he examined evidence when he had not.” The reliability of the trial results in Appellant’s court-martial, in light of the information about Mills, has been addressed in subsequent factfinding and appellate proceedings. See United States v. Luke, 63 M.J. 60, 63 (C.A.A.F.2006); United States v. Luke, 65 M.J. 5 (C.A.A.F.2007); United States v. Luke, No. NMCCA 200000481, 2009 CCA LEXIS 270, 2009 WL 2345124 (N.M.Ct.Crim.App. July 31, 2009) (unpublished).
Following discovery of the deficiencies in the testing process due to Mills’s misconduct, USACIL asked law enforcement agencies to return the physical evidence in the cases he *326 had handled so that USACIL could conduct new testing. The Naval Criminal Investigative Service reported that it had destroyed the evidence in Appellant’s case prior to receiving the request from USACIL. As a result, the physical evidence relied upon by the court-martial to convict Appellant was not available for retesting during the subsequent factfinding proceedings.
The evidence received in the factfinding proceedings confirmed information about Mills’s misconduct as a forensic examiner. The evidence confirmed that Mills, among other things, allowed “samples to contaminate one another,” “did not follow proper testing procedures,” on at least one occasion “attempted to cover up his mistake by making a false data entry,” and “had significant problems with the DNA analysis process, which calls into question the forensic reliability of the results of his DNA casework.” The evidence also demonstrated that contamination of the physical evidence could occur during the serology portion of the testing, thereby undermining the validity of the subsequent DNA testing.
The factfinding hearings identified the period of Mills’s most serious misconduct as taking place while he was a DNA examiner, a period that occurred several years after his work in Appellant’s case as a serology examiner. In that light, and in view of the testimony about the physical evidence, testing process, and lack of motive for falsification, the military judge conducting the factfinding hearing concluded that there had been no contamination or false testimony with respect to Appellant’s DNA. The military judge noted, however, that the physical evidence had been destroyed, and that contamination can occur during the serology portion of the testing process.
7. Discussion
The majority affirms the findings of the court-martial, relying on the standard set forth in United States v. Brooks, 49 M.J. 64, 69 (C.A.A.F.1998) (requiring an evaluation of “whether the newly discovered evidence, if considered by a court-martial in light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused”) (citation and quotation marks omitted). If Brooks provided the sole governing principle, I would agree with the majority. In the present case, however, we must also take into consideration Mesarosh v. United States, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956), which applies when post-trial information so discredits the credibility of a principal government witness that it undermines the integrity of the judicial process.
The Supreme Court distinguished the circumstances in Mesarosh from the normal treatment of a new trial request involving newly discovered evidence. Id. at 9, 77 S.Ct. 1. In Mesarosh, the government identified information that impugned the credibility of a witness in unrelated proceedings. The Supreme Court concluded that in such a case the credibility of important government witnesses implicates the “integrity of ... criminal trial[s] in the federal courts,” and held that the “dignity of the United States Government will not permit the conviction of any person on tainted testimony.” Id. at 3, 9, 77 S.Ct. 1.
During the proceedings before the Supreme Court in Mesarosh, the government had suggested that the case should be returned to the district court to assess whether the newly discovered evidence in fact warranted a new trial. Id. at 8-9, 77 S.Ct. 1. The Supreme Court rejected that approach, and instead set aside the conviction. Id. at 9, 14, 77 S.Ct. 1. The Court concluded that because “the original finder of fact was a jury,” only a “jury can determine what it would do on a different body of evidence.” Id. at 12, 77 S.Ct. 1. The principles promulgated by the Court in Mesarosh have since been utilized in similar situations by other federal courts. See, e.g., Williams v. United States, 500 F.2d 105 (9th Cir.1974); United States v. Polisi, 416 F.2d 573 (2d Cir.1969).
In the case before us, Mills — a Government employee — was interjected into the case by the Government to participate in its investigation. He played a vital role in the examination of Appellant’s forensic evidence. Mills was the first USACIL examiner to *327 come into contact with the evidence at issue, and he repeatedly interacted with the evidence during the course of his serological examination. Specifically, Mills removed the evidence for examination, visually inspected it for stains, cut out the areas of suspected stain with scissors, placed these materials in sterile test tubes for storage, and forwarded these tubes to Chase for DNA analysis.
The Government’s investigation established Mills’s history of cross-contamination, violation of laboratory protocols, “incomplete and incompetent” analysis as a DNA examiner, and “thoroughness issues” as a serology examiner, all of which underscore the potential for contamination of Appellant’s evidence in the present case. The Government subsequently destroyed the physical evidence at issue, thereby precluding the type of retesting that might have restored some level of confidence in the process. In this context, the evidence of Mills’s misconduct undermines the integrity of Appellant’s verdict. Because “the original finder of fact” was a court-martial panel, only a new panel “can determine what it would do on a different body of evidence.” Mesarosh, 352 U.S. at 12, 77 S.Ct. 1. Accordingly, I respectfully dissent from the majority’s decision to affirm the findings and sentence.