# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2016-17**

————————————

**Clarence ANDERSON III**
Major (O-4), U.S. Air Force, *Petitioner*

**v.**

**UNITED STATES**
*Respondent*

————————————

Petition for New Trial Pursuant to Article 73, UCMJ

Decided 31 May 2017

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Dismissal and confinement for 42 months. Sentence adjudged 22 April 2015 by GCM convened at Holloman Air Force Base, New Mexico.

*For Petitioner:* Brian L. Mizer, Esquire (argued); Major Lauren A. Shure, USAF; Captain Allen S. Abrams, USAF.

*For Respondent:* Major G. Matt Osborn, USAF (argued); Colonel Katherine E. Oler, USAF; Major Jeremy D. Gehman, USAF; Major Mary Ellen Payne, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the court, in which Senior Judges MAYBERRY and JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A military judge sitting as a general court-martial convicted Petitioner, contrary to his pleas, of sexual assault, abusive sexual contact, aggravated assault, assault consummated by battery, kidnapping, and wrongfully communicating a threat—in violation of Articles 120, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, 934.[1] The adjudged and approved sentence was a dismissal and confinement for 42 months.

While his appeal under Article 66, UCMJ, 10 U.S.C. § 866, was pending before this court, Petitioner submitted a petition for a new trial to The Judge Advocate General (TJAG) of the Air Force. Pursuant to Rule for Courts-Martial (R.C.M.) 1210(e), the petition was forwarded for our review. The petition focuses on the relationship between the victim, KA, and her co-worker. Petitioner alleges that newly discovered evidence demonstrates that KA committed fraud upon the court by committing perjury during an evidentiary hearing. We disagree and deny the petition for a new trial.

## I. BACKGROUND

Petitioner and KA met in 1994 while attending junior college in Alabama. After going their separate ways, they reconnected in November of 2007 and married in February of 2008. In August of 2009 while in Alabama, Petitioner choked KA. In November of 2012 while in Florida, Petitioner put his hand over KA's mouth and nose, confined her in a bathroom, and told her that he knew how to kill her and blame it on PTSD. In September of 2013 while in New Mexico, Petitioner sexually assaulted KA. KA reported these crimes to the Air Force Office of Special Investigations in mid-September 2013.

When Petitioner and KA moved to New Mexico in 2013, KA became a special education teacher at a local school. On the first day of pre-planning for teachers in August of 2013, KA met JM, also a teacher and a football coach at the school. At trial, Petitioner sought to introduce evidence of a sexual relationship between KA and JM. Pursuant to Military Rule of Evidence (Mil. R. Evid.) 412, the military judge held a closed hearing at which KA and JM testified.

KA testified that she and JM developed a dating relationship in the spring of 2014. She acknowledged that the relationship began before she was divorced from Petitioner. However, KA denied that JM was "frequenting her house" in September 2013. KA further testified that, prior to the spring of 2014, she had gone out with JM, they had spent time at each other's houses, and that they

---

[1] The military judge acquitted Petitioner of two specifications of assault consummated by battery and one specification of kidnapping.

had spent the night together. However, she denied that they had sexual relations before March or April 2014.

JM also testified at the closed hearing. He testified that he and KA began talking as friends and eventually became more than friends. JM claimed he could not remember when their dating relationship started. He also could not recall when he had sexual relations with KA for the first time, but he believed such relations began "probably after" Christmas of 2013 or on New Year's Day in 2014.

Additionally, at the time of the Mil. R. Evid. 412 hearing, the Defense was aware of, or reasonably should have been aware of, a police report that indicated JM was a "[house] guest of [KA]" at 0638 hours on 2 October 2013. The Defense was also aware of, or reasonably should have been aware of, text messages sent from KA's civilian attorney to Petitioner's civilian attorney that suggested KA would consider supporting an alternative disposition to Petitioner's court-martial if they could resolve a pending child custody matter. This information was not presented during the Mil. R. Evid. 412 hearing or during the court-martial.

After receiving evidence and considering the parties' positions, the military judge determined that evidence of a sexual relationship between KA and JM was not admissible under Mil. R. Evid. 412. He reasoned, "Given that the initial report made by [KA] occurred in September and the dating and sexual relationship . . . occurred months later, the defense has simply failed to meet its burden with regard to demonstrating relevance."

After trial, Petitioner's mother surreptitiously recorded phone calls she made to JM. From these phone calls, the Defense learned of payments KA's mother made to JM during the summer of 2014. Consequently, the convening authority granted Petitioner's request for a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session to address the circumstances of these payments. After hearing testimony from JM, KA, and KA's mother, the military judge concluded that KA's mother provided the money to JM for renovations to his house "for the purpose of ensuring that her daughter and grandchildren were going to live in a suitable house with sufficient living space." The military judge further determined that JM "accepted the payments for the renovation in preparation to marry [KA] and ultimately merge their families together." Essentially, the military judge found that the payments were not intended to influence JM's testimony. Ultimately, the military judge held that this evidence "would not probably produce a substantially more favorable result" for Petitioner.

In addition to addressing the circumstances of the payments, Petitioner also attempted to use the post-trial hearing to readdress KA and JM's sexual

relationship. During the post-trial hearing, KA testified that her relationship with JM began to turn from a professional relationship into a dating relationship "around the time of Thanksgiving and going into the holiday season of 2013." She described the transition in the relationship as, "We didn't go from co-workers to dating. We went from co-workers to him being like a protector, watching out for myself and my family, to friends, to then dating." KA maintained that she did not know exactly when the relationship changed into a dating relationship.

JM also testified at the post-trial hearing. He again stated that he did not know when he started dating KA; however, he did state that he was dating KA by the time Petitioner confronted him at a high school basketball game in November or December 2013. In an unsworn memorandum completed after this post-trial hearing, JM claimed that he was in a dating relationship with KA which was "sexual in nature" by "roughly November of 2013."

## II. DISCUSSION

Petitioner accuses KA of committing perjury during the Mil. R. Evid. 412 hearing when she stated that she and JM developed a dating and sexual relationship in the spring of 2014. Petitioner argues that evidence of this sexual relationship should have been admissible under Mil. R. Evid. 412 and would have been powerful impeachment evidence.

A petitioner may request a new trial "on the grounds of newly discovered evidence or fraud on the court." Article 73, UCMJ, 10 U.S.C. § 873. Petitions for a new trial do not proceed through the usual appellate chain. *Id*.; *see United States v. Brooks*, 49 M.J. 64, 68 (C.A.A.F. 1998). Instead, they are submitted to TJAG, who acts on the petition unless the case is pending before an appellate court, in which case the petition is referred to that court. Article 73, UCMJ; R.C.M. 1210(a), (e).

"The determination of sufficient grounds for granting a petition for new trial in the military rests 'within the [sound] discretion of the authority considering . . . [that] petition.'" *United States v. Bacon*, 12 M.J. 489, 492 (C.M.A. 1982). Accordingly, it is this court's prerogative to weigh the testimony at trial against the post-trial evidence to determine which is credible. *Id*. We are also free to exercise our fact-finding powers. *See id*. The only limit on our fact-finding powers is that our "broad discretion must not be abused." *Id*.

"'[R]equests for a new trial . . . are generally disfavored,' and are 'granted only if a manifest injustice would result absent a new trial . . . .'" *United States v. Hull*, 70 M.J. 145, 152 (C.A.A.F. 2011) (quoting *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)).

4

"No fraud on the court-martial warrants a new trial unless it had a substantial contributing effect on a finding of guilty or the sentence adjudged." R.C.M. 1210(f)(3). Neither Article 73 nor R.C.M. 1210 define "fraud on the court." The non-binding discussion section of R.C.M. 1210 states that a new trial may be granted if there is "confessed or proved perjury . . . which clearly had a substantial contributing effect on a finding of guilty and without which there probably would not have been a finding of guilty of the offense."

When perjury has not been admitted or confessed, defects in the evidence produced may preclude a finding that the alleged perjury has been proved. *United States v. Bourchier*, 17 C.M.R. 15, 25 (C.M.A. 1954). In general, post-trial changes in a witness's testimony "are not viewed favorably" and must be viewed with "extreme suspicion." *United States v. Rios*, 48 M.J. 261, 268 (C.A.A.F. 1998) (citations and quotation marks omitted). While "[a]dmitted perjury by the purported victim would constitute fraud on the court," *United States v. Foster*, 1993 C.M.R. LEXIS 122, at *5–6 (A.F.C.M.R. 8 Mar. 1993) (unpub. op.), "'simple inaccuracies or inconsistencies' are not considered materially false and do not necessitate a new trial." *United States v. Hoyes*, 2013 CCA LEXIS 1075, at *26 (N-M. Ct. Crim. App. 31 Dec. 2013) (unpub. op.) (quoting *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001)).

We do not find that KA committed fraud upon the court. Her testimony that she did not have a sexual relationship with JM until the spring of 2014 has remained reasonably consistent. While her testimony regarding the precise moment their friendship turned into a dating relationship has varied slightly, we find that these are simple inaccuracies or inconsistencies and are far from proving a deliberate lie or fraud.

Petitioner relies on JM's statements to establish a timeline that proves KA lied about when their sexual relationship first developed. However, JM's timeline is far from clear. At the pretrial hearing, he stated that a sexual relationship developed "probably after" Christmas of 2013 or New Year's Day in 2014, and his post-trial memorandum states that the relationship was "sexual in nature" by "roughly November of 2013." JM's use of the words "probably" and "roughly" belie the precision Petitioner seeks and needs to support his accusations. JM's lack of particularity is further compounded by his testimony that he is not a "date person"—a statement supported by testimony filled with uncertain or qualified phrases regarding when actions occurred.

Even if we assume that JM's testimony established that KA and JM had a sexual relationship as early as November of 2013, this would not have a "substantial contributing effect on a finding of guilty or the sentence adjudged." Petitioner argues that had this information been presented to the military judge he might have reached a different conclusion regarding the admissibility

of the sexual relationship under Mil. R. Evid. 412.[2] However, the ruling was based on the fact that the sexual relationship did not start until after KA reported Petitioner's abuse in September of 2013. JM's post-trial statements do not impact the military judge's rationale for denying the motion.

Petitioner invites us to look to *United States v. Williams* as precedential support for his claims. In *United States v. Williams*, the United States Court of Appeals for the Armed Forces held that a military judge abused his discretion in denying a motion for a new trial based on newly-discovered evidence that the alleged victim had "an extramarital relationship before the offense and after it; that [the other individual] terminated this relationship after the alleged rape [by the appellant/petitioner]; and that both [the alleged victim and the other individual] affirmatively concealed these facts from the earlier court-martial." 37 M.J. at 355. The court concluded, "A newly convened court-martial might reasonably find or infer that [the alleged victim] was so concerned about preserving her extramarital relationship . . . that she would fabricate a rape charge in response to appellant's spreading the word of his having had sexual intercourse with her." *Id.* at 360–61.

Unlike *Williams*, a newly convened court-martial in this case could not find or infer that by reporting Petitioner's crimes KA was attempting to preserve a sexual relationship with JM because, at the time she reported Petitioner's offenses, no such relationship existed.

Petitioner next argues that we should conclude that KA lied about when the sexual relationship began because JM's post-trial statements differed from his testimony in court.[3] Petitioner attempts to paint a nefarious setting for this alleged change by asking us to infer that JM altered his testimony in exchange for the renovations to his home paid for by KA's mother.

After the post-trial Article 39(a) session, the military judge reasonably found that KA's mother provided the money to "ensur[e] that her daughter and grandchildren were going to live in a suitable house with sufficient living space" and that JM "accepted the payments for the renovation in preparation to marry [KA] and ultimately merge their families together." We agree with the military judge's assessment of the payments' purpose and decline to draw

---

[2] The Mil. R. Evid. 412 ruling did not limit the Defense's ability to attempt to establish bias or motive to fabricate based on the existence of a non-sexual relationship between KA and JM before or at the time she reported Petitioner's offenses. However, notably, the Defense did not pursue this line of questioning at trial.

[3] Petitioner does not argue that JM committed perjury or that any such perjury would warrant a new trial.

the cynical inferences proposed by Petitioner. We find no evidence that the payments influenced JM's testimony.

JM's pretrial testimony, post-trial testimony, and post-trial memorandum all employ qualified, vague language about when the sexual relationship began. His testimony on the motion that a sexual relationship began "probably after" Christmas of 2013 or New Year's Day in 2014 is reasonably consistent with his post-trial statement that this occurred in "roughly November of 2013." Therefore, arguable inconsistencies between KA's and JM's timelines already existed at the time of the Mil. R. Evid. 412 hearing, and JM's post-trial statements would not have altered the military judge's ruling.

Moreover, this case did not rest on solely on KA's credibility. The police officers that responded to the 2009 and 2012 incidents testified. KA's 13-year-old son testified about what he witnessed during portions of the 2012 assault. The Government introduced photographs of KA taken after the 2012 assault. In addition to witnesses' testimony regarding Petitioner's statements, the Government introduced text messages sent in January of 2014 in which Petitioner told KA:

> Not saying I'm not innocent [sic] at all but you started with the mail altercation and then threatened me with changing the locks and grabbing my uniforms saying they were going to be tossed on the lawn. You started it and then I got the best of you. You have to take that loss and not run to the police two days later.
>
> . . . .
>
> . . . I don't like the idea I put my hands on you or that you want 1/2 my retirement and house.
>
> . . . .
>
> And though I wish the night of Sat, 24 Nov would have never happened the[] way we were heading it was bound to happen but you started and I got the best of you. What happened in AL was in AL. Nothing happened in the truck on the way home. What happened in FL was what happened in FL and if I had to go back I would have done the same thing because you started it and thought it was ok to disrespect me.

Petitioner also took the stand and notably corroborated much of KA's testimony. He admitted that he put his hands on her during each of the physical assaults. According to Petitioner, he did this to "restrain" her. Petitioner also admitted that on a night in September of 2013, around 0100 hours, KA was sleeping in her bed when Petitioner took off all his clothes and got into bed

with her. According to Petitioner, however, he only wanted to engage in conversation and did not make any sexual overtures.

Given the evidence in this case, we do not believe that a manifest injustice would occur absent a new trial. Petitioner failed to demonstrate that KA committed a fraud on the court-martial.

Finally, because Petitioner's arguments also involve evidence discovered after trial, we address whether a new trial should be granted on the grounds of newly discovered evidence. A new trial shall not be granted on the grounds of newly discovered evidence unless the petitioner shows that:

> (A) The evidence was discovered after the trial;

> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and

> (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

R.C.M. 1210(f)(2); *see United States v. Luke*, 69 M.J. 309 (C.A.A.F. 2011); *United States v. Johnson*, 61 M.J. 195, 198–99 (C.A.A.F. 2005).

The evidence discovered after trial, as articulated by Petitioner during argument, related to the payments made by KA's mother to JM and statements from KA and JM regarding when their sexual relationship began.[4] As stated above, there is no evidence that the payments made to JM were made for an improper purpose or that they influenced JM's testimony. Additionally, KA's and JM's post-trial statements regarding when a sexual relationship occurred would not have altered the military judge's Mil. R. Evid. 412 ruling. Consequently, this newly discovered evidence, had it been considered by the court-martial in light of all other pertinent evidence, would not probably produce a substantially more favorable result for Petitioner.

---

[4] The Defense knew of, or reasonably should have known of, a police report placing JM at KA's home on 2 October 2013 and text messages from KA's civilian attorney.

### III. CONCLUSION

Petitioner's request for a new trial is **DENIED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court