UNITED STATES, Appellee

v.

Antoinette E. JOHNSON, Senior Airman
U.S. Air Force, Appellant

No. 04-0611

Crim. App. No. 34889

United States Court of Appeals for the Armed Forces

Argued March 1, 2005

Decided July 8, 2005

CRAWFORD, J., delivered the opinion of the Court, in which
GIERKE, C.J., and BAKER and ERDMANN, JJ., joined.  EFFRON, J.,
filed a separate dissenting opinion.


Counsel

For Appellant:  Colonel Carlos L. McDade (argued); Major Terry
L. McElyea, Major James M. Winner, and Major Sandra K.
Whittington (on brief).

For Appellee:  Major John C. Johnson (argued); Lieutenant
Colonel Robert D. Combs and Lieutenant Colonel Gary F. Spencer
(on brief).

Military Judge:  Rodger A. Drew Jr.


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge CRAWFORD delivered the opinion of the Court.

Contrary to her pleas, Appellant was convicted by a general court-martial of officer and enlisted members of two specifications of assault consummated by battery, one specification of assault on a security forces member in the execution of her duties, and two specifications of assault with intent to commit voluntary manslaughter, in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 128, 134 (2000), respectively.  The convening authority approved the adjudged sentence of confinement for fourteen years, forfeiture of all pay and allowances, reduction to E-1, and a dishonorable discharge.

The United States Air Force Court of Criminal Appeals found both the findings and sentence correct in law and fact, but reduced the confinement to ten years.  United States v. Johnson, No. ACM 34889, 2004 CCA LEXIS 133, 2004 WL 1238955 (A.F. Ct. Crim. App. May 21, 2004).  On November 16, 2004, this Court granted review of the following issue:

> WHETHER THE LOWER COURT AND MILITARY JUDGE ERRED IN DENYING THE DEFENSE MOTION FOR A NEW TRIAL.

For the reasons discussed below, we hold that neither the military judge nor the Court of Criminal Appeals erred, and we affirm.

FACTS

We accept and incorporate the lengthy but critical factual account of the court below:

> The appellant was stationed at Spangdahlem Air Base, Germany, and assigned to the 52d Equipment Maintenance Squadron. She met Airman First Class (A1C) Amy Wheeler, a security forces member, and they began a lesbian relationship that lasted about one year. The relationship was turbulent, resulting in arguments and physical confrontations. When A1C Wheeler tried to end the relationship in January 2000, the appellant took an overdose of pills in an apparent suicidal gesture. Thereafter, they resumed their relationship.
>
> A1C Wheeler served at a deployed location between May and September 2000. Upon her return, A1C Wheeler broke off the affair with the appellant. In late September 2000, A1C Wheeler met Airman (Amn) Nichole Wesolowski, another security forces member, and they became friends. The appellant suspected that A1C Wheeler was romantically involved with Amn Wesolowski, and was jealous and angry. This led to the two incidents that formed the basis for the charges in this case.
>
> The first incident occurred in A1C Wheeler's dormitory room in late September or early October 2000. The appellant was upset about A1C Wheeler's relationship with Amn Wesolowski. They argued and the appellant choked A1C Wheeler. This incident formed the basis for one specification of assault consummated by a battery on A1C Wheeler.
>
> The appellant made another suicidal gesture in October 2000. A1C Wheeler found her when she returned a vehicle to the appellant's home and got medical assistance. As a result, the appellant faced administrative discharge from the Air Force.
>
> The second incident occurred at the armory in the early morning hours of 21 October 2000. Amn Wesolowski was visiting A1C Wheeler, who was on duty as the armorer for the security forces squadron, responsible for safeguarding and issuing small arms.

The appellant called A1C Wheeler and they argued. The appellant went to the armory, and a physical altercation ensued between the appellant, A1C Wheeler, and Amn Wesolowski. The appellant attempted to take A1C Wheeler's handgun but was unsuccessful. She then seized a handgun from the storage racks, inserted a loaded magazine, chambered a round, and pointed the weapon at A1C Wheeler and Amn Wesolowski. A1C Wheeler aimed her service weapon at the appellant and warned her repeatedly to drop the gun. The appellant did not comply. A1C Wheeler shot the appellant in the leg, incapacitating her.

. . . .

At the outset of the trial, it was apparent that the relationships between the appellant, A1C Wheeler, and Amn Wesolowski would be matters of concern. The government acknowledged that the nature of the relationship between A1C Wheeler and the appellant would be relevant, but moved to keep out evidence of specific acts, to which the defense agreed. The government also moved to exclude evidence of the relationship between A1C Wheeler and Amn Wesolowski. The defense maintained that it was relevant and necessary to show bias under Mil. R. Evid. 608(c). The military judge agreed, and allowed the defense to explore the nature of the relationship generally.

The evidence presented at trial included testimony about these relationships. A1C Wheeler testified about her lesbian relationship with the appellant and the disputes between them. The cross-examination of A1C Wheeler focused on her lesbian affair with the appellant. The trial defense counsel asked A1C Wheeler if she started dating Amn Wesolowski "right after the incident at the armory," but she denied it. A1C Wheeler denied kissing Amn Wesolowski, but explained that Amn Wesolowski tried to kiss her; she demurred and Amn Wesolowski kissed her on the cheek. She admitted that she and Amn Wesolowski had changed dormitory rooms to share adjoining rooms after the incident. Trial defense counsel's cross-examination challenged Amn Wheeler extensively about false statements to investigators about her lesbian relationship, and alleged inconsistencies in her prior statements. The defense called as a witness A1C Jessica Ackerman, a security forces investigator, who

4

related that Amn Wesolowski said she had started dating A1C Wheeler shortly after the armory incident.

Both parties rested on 4 May 2001. Due to conflicting commitments, the trial judge recessed the trial for three weeks. The proceeding resumed with oral arguments on findings on 29 May 2001.

During the recess, Air Force investigators looked into an allegation that A1C Wheeler had stolen a television belonging to the appellant. During the previous summer, the appellant agreed to purchase a television from another airman for $200.00. Delivery was an issue, because of conflicting leave and deployment schedules. They worked out an arrangement where the appellant mailed her check to the seller, who cashed it. Just before deploying, the seller left a note and his room key, inviting A1C Wheeler or the appellant to get the television from his room. When he returned in December, the television was gone and the key was returned, so the seller assumed all was in order. By then, the appellant was in pretrial confinement resulting from the incident at the armory. While making arrangements to store her property, the appellant realized the television was missing, and reported it stolen. On 10 May 2001, the investigators questioned A1C Wheeler about the missing television. She made a written statement denying any knowledge of its location.

Trial resumed on 29 May 2001 with arguments on findings. The court-martial found the appellant guilty as noted above, and the sentencing hearing followed. Both A1C Wheeler and Amn Wesolowski testified during the sentencing case concerning the impact of the offenses on them.

After trial, the investigators questioned Amn Wesolowski about the television. She indicated she helped A1C Wheeler move a television to a dormitory room. In the same statement, Amn Wesolowski noted a fact about the incident at the armory that she had omitted. She reported that, before A1C Wheeler opened the armory door, she drew her handgun "in fear of her life," Amn Wesolowski asked her what she was doing, and A1C Wheeler re-holstered the weapon. Amn Wesolowski said she did not know why she had not mentioned that before, other than she thought it was

5

not relevant.

On 25 July 2001, the investigators re-interviewed A1C Wheeler about the television. She indicated that when she returned from the deployment, she found the note inviting her to pick up the television, and she did so. Apparently the television fell and may have been damaged while in A1C Wheeler's possession. A1C Wheeler admitted that she made a false official statement to investigators when she denied knowledge of the location of the television. She said she did it because the appellant's lawyers "would have used it against me," and that, "they would have tried to say I wasn't a credible witness and I would have lost my case."

There was one other incident post-trial that came to the attention of the defense counsel. On 3 August 2001, Ms. Erica Shipp walked into the lobby of the base Finance office, and saw two women, in uniform, kissing. She reported it to a clerk on duty. He checked the sign-in roster, and one of the names was "Wesolowski."

The defense counsel moved for a new trial under R.C.M. 1210. They based the request on "newly discovered evidence," specifically Amn Wesolowski's report that A1C Wheeler drew and re-holstered her weapon before opening the door, and A1C Wheeler's false official statement about knowing the location of the missing television. The defense counsel also asked the military judge to consider additional statements from their previous witness, A1C Ackerman, about specific conduct between A1C Wheeler and Amn Wesolowski, arguing that A1C Ackerman had just remembered the details. The defense also asserted that A1C Wheeler and Amn Wesolowski committed fraud on the court by concealing the extent of their personal relationship.

The military judge reconvened the court-martial for a post-trial session and took statements and evidence on the motion. See United States v. Scaff, 29 M.J. 60, 65 (C.M.A. 1989). A1C Wheeler and Amn Wesolowski asserted their right to remain silent. The convening authority denied the defense request for testimonial immunity for these witnesses. The military judge entered extensive findings of fact and

conclusions of law, and denied the motion. Applying the criteria in R.C.M. 1210, the military judge found that the false official statement about the television and the report of drawing and re-holstering the weapon was discovered after trial, and was not such that it would have been discovered before trial in the exercise of due diligence. However, he concluded that the new evidence probably would not have resulted in a substantially more favorable result for the accused. The military judge also concluded that, in light of the evidence admitted at trial about the relationship between A1C Wheeler and Amn Wesolowski, the additional evidence would not have had a substantial contributing effect on the findings of guilty or the sentence. He declined to consider the additional evidence A1C Ackerman remembered after trial.

Johnson, 2004 CCA LEXIS, at *2-*4, *15-*21, 2004 WL 1238955, at *1-*2, *6-*8.

## DISCUSSION

Appellant contends that the newly discovered evidence affecting the credibility of Airman First Class (A1C) Amy J. Wheeler and A1C[*] Nichole L. Wesolowski would probably produce a substantially more favorable result for Appellant at a new trial and that the fraud on the court allegedly perpetrated by A1C Wheeler (and to a lesser degree by A1C Wesolowski) had a substantial contributing effect on the findings of guilty and the sentence. The Government invites us to conclude that the new evidence is largely cumulative and that neither the military

---

[*] Although referred to as "Airman" in the charge sheet and the opinion of the court below, Wesolowski was apparently an "Airman First Class" at the time of trial and is referred to as such in this opinion.

judge nor the court below erred in denying Appellant's request for new trial. We agree with the Government.

Article 73, UCMJ, 10 U.S.C. § 873 (2000), allows petitions for new trials "on the grounds of newly discovered evidence or fraud on the court." Implementing this UCMJ provision, Rule for Courts-Martial (R.C.M.) 1210(f)(2), (3) provide that:

> (2) <u>Newly discovered evidence</u>. A new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that:
> (A) The evidence was discovered after the trial;
> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
> (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.
>
> (3) <u>Fraud on court-martial</u>. No fraud on the court-martial warrants a new trial unless it had a substantial contributing effect on a finding of guilty or the sentence adjudged.

Although Appellant's motion was made under R.C.M. 1102, which governs post-trial sessions, the military judge correctly applied the standards in R.C.M. 1210, as discussed in <u>United States v. Scaff</u>:

> If evidence is discovered after trial which would constitute grounds for a new trial under RCM 1210(f), this might be considered a "matter which arises after trial and which substantially affects the legal sufficiency of any findings of guilty or the sentence" within the meaning of RCM 1102(b)(2). However, even if the drafters of the Manual did not intend such an interpretation of this Rule, we still are persuaded that Article 39(a) of the Code empowers the military judge to convene a post-trial session to

8

> consider newly discovered evidence and to take
> whatever remedial action is appropriate.

29 M.J. 60, 65-66 (C.M.A. 1989).

"This Court has opined that requests for a new trial, and thus rehearings and reopenings of trial proceedings, are generally disfavored. Relief is granted only if a manifest injustice would result absent a new trial, rehearing, or reopening based on proferred newly discovered evidence." United States v. Williams, 37 M.J. 352, 356 (C.M.A. 1993). In United States v. Brooks, this Court held that

> [w]hen presented with a petition for new trial, the
> reviewing court must make a credibility determination,
> insofar as it must determine whether the "newly
> discovered evidence, if considered by a court-martial
> in the light of all other pertinent evidence, would
> probably produce a substantially more favorable result
> for the accused." RCM 1210(f)(2)(C). The reviewing
> court does not determine whether the proferred
> evidence is true; nor does it determine the historical
> facts. It merely decides if the evidence is
> sufficiently believable to make a more favorable
> result probable.

49 M.J. 64, 69 (C.A.A.F. 1998).

"We review a military judge's ruling on a petition for a new trial for abuse of . . . discretion." United States v. Humpherys, 57 M.J. 83, 96 (C.A.A.F. 2002). An abuse of discretion occurs "if the findings of fact upon which he predicates his ruling are not supported by evidence of record; if incorrect legal principles were used by him in deciding this motion; or if his application of the correct legal principles to

9

the facts of a particular case is clearly unreasonable." <u>United States v. Williams</u>, 37 M.J. 352, 356 (C.M.A. 1993).

In denying Appellant's new trial request, the military judge analyzed the new evidence and weighed it against the other evidence at trial. The military judge's conclusions of law properly apply the tests of both R.C.M. 1210(f)(2) and R.C.M. 1210(f)(3). He concluded that the new evidence, considered together with all other evidence, would not "probably produce a substantially more favorable result" for Appellant. He also concluded that, even if the members were convinced by the additional evidence of perjury by A1C Wheeler and A1C Wesolowski that there had been a fraud on the court, that perjured evidence had not had "a substantial contributing effect on any finding of guilty or the sentence adjudged."

In the context of Military Rule of Evidence (M.R.E.) 412, we have indicated that in determining whether evidence is material, the military judge looks at: "'the importance of the issue for which the evidence was offered in relation to the other issues in this case; the extent to which this issue is in dispute; and the nature of other evidence in the case pertaining to this issue.'" <u>United States v. Colon-Angueira</u>, 16 M.J. 20, 26 (C.M.A. 1983)(quoting <u>United States v. Dorsey</u>, 16 M.J. 1, 6 (C.M.A. 1983)). We believe this test is useful as well in the context of a petition for a new trial under R.C.M. 1210.

In determining that the new evidence would not produce a substantially more favorable result for Appellant, the court below correctly noted that:

> [w]hen petitions for a new trial are submitted to this Court, we have the "'prerogative' of weighing 'testimony at trial against the' post-trial evidence 'to determine which is credible.'" United States v. Bacon, 12 M.J. 489, 492 (C.M.A. 1982) (quoting United States v. Brozauskis, 46 C.M.R. 743, 751 (N.C.M.R. 1972)). Consistent with federal civilian practice, we may review the evidence "both in terms 'of credibility as well as of materiality.'" Id. (quoting Jones v. United States, 279 F.2d 433, 436 (4th Cir. 1960)).

Johnson, 2004 CCA LEXIS 133, at *22-*23, 2004 WL 1238955, at *9.

Appellant's new evidence raises several possibilities: (1) a fact-finder could conclude from this new evidence that the security policewomen, who were the putative victims of Appellant's crimes, had engaged in carefully crafted lies; (2) the new evidence could strengthen the motive to lie of the two "victims," one of whom shot Appellant during the melee; (3) A1C Wheeler's falsely sworn statement to the Air Force Office of Special Investigations (OSI) was admittedly made for the purpose of protecting her credibility at Appellant's trial and evinces the degree to which A1C Wheeler had sacrificed her integrity as a law enforcement officer in favor of her own interests; and (4) the new evidence could be important during the sentencing, as well as in the making of the findings, because both A1C Wheeler and A1C Wesolowski gave "victim impact" testimony. See R.C.M. 1001(b)(4).

11

On the other hand, as the military judge and the court below correctly noted, this new evidence must be weighed against the other evidence at trial.  In this regard, and in addition to the testimony of both A1C Wheeler and A1C Wesolowski, Appellant's oral statements and e-mails are compelling evidence not only of her guilt and her own poor credibility, but also of the extent to which the relationship between A1C Wheeler and A1C Wesolowski was already before the members.

In Appellant's oral statement to the OSI, she first maintained that she remembered nothing of the armory incident. When confronted with evidence of her fingerprints on A1C Wheeler's pistol, Appellant then admitted that she had attempted to draw A1C Wheeler's weapon only after A1C Wheeler and A1C Wesolowski had her pinned to the floor of the armory.  Appellant then admitted that she took a 9mm gun from the rack, got a magazine, which she loaded into the gun, and then chambered a round (while leaving the safety on).  Finally, Appellant admitted that she pointed the weapon at both A1C Wheeler and A1C Wesolowski, but denied any intent to harm either.

In the e-mail from Appellant to a third party, dated the day before the armory incident and erroneously delivered to A1C Wheeler, Appellant stated:

> I've been an a[******] ever since she broke up with
> me.  I try not to be, but I just don't understand.  I
> know she's tired of talking about it so I'm not gonna
> bring it up anymore either.  I know I make her sound

12

bad, but it really isn't all her fault.  I've done
some pretty f[*****] up stuff to her too.  We had a
fight a couple of weeks ago and I choked her.  I hurt
her pretty bad . . . . I'd give anything to be
[Wesolowski] right now.  I hope she knows how lucky
she is.  She better treat her right too.  I'll
f[******] kill that b[****] with my bare hands.

Although Appellant's new evidence is, on the surface,
similar in nature to that examined by this Court in United
States v. Sztuka, 43 M.J. 261, 268 (C.A.A.F. 1995) ("[A]
petition for new trial may rest upon newly discovered evidence
that would 'substantially impeach[]' critical prosecution
evidence 'on a material matter.'") (involving purported
admission by husband that he put marijuana in appellant's food),
as well as both United States v. Singleton, 41 M.J. 200, 204-07
(C.A.A.F. 1994) (ordering a new trial on multiple source
evidence of alternate perpetrator of threat and rape), and
United States v. Niles, 45 M.J. 455, 459-60 (C.A.A.F. 1996)
(ordering new trial on evidence of conflicting factual accounts
by prosecutrix in rape case), it is distinguishable.

First, the new evidence here does not relate directly to
the assaults of which Appellant was convicted, i.e., the
evidence does not offer some new version of the facts presented
at trial.  The trial was not a one-on-one testimonial battle:
all three women testified; Appellant's oral admissions were
recounted by an OSI agent; and an incriminating e-mail from

13

Appellant, expressing jealousy and rage, and admitting to one of the assaults, was received in evidence.

Second, while credibility of witnesses certainly was an issue, the record is strewn with indicia of dishonesty pertaining to all three airmen.  A reasonable fact-finder could have concluded that all three women were lying, in varying degrees.  Given Appellant's admissions and her e-mail, it was not an abuse of discretion for the military judge and the court below to determine that even substantial additional impeachment material or potential perjury would not meet the requirements of R.C.M. 1210(f)(2), (3).

Third, A1C Wesolowski's "forgotten" observation of A1C Wheeler having drawn, and then reholstered, her weapon before A1C Wheeler opened the armory door to Appellant, is of ambiguous effect.  While it further impeaches A1C Wesolowski's credibility, it also serves to establish that A1C Wheeler was very afraid of Appellant, bolstering the evidence of prior assaults of which Appellant was convicted.

Finally, evidence that A1C Wheeler and A1C Wesolowski had been kissing in the finance office while in uniform was largely cumulative.  There was already significant evidence from which the members could conclude that A1C Wheeler and A1C Wesolowski were romantically involved, so as to support Appellant's claim of bias and motive to lie.

14

CONCLUSION

Reviewing the military judge's ruling and the holding of the court below, in the context of the standard of review for a new trial, we hold that the denial of Appellant's request for a new trial was not an abuse of discretion.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

EFFRON, Judge (dissenting):

Appellant was charged with assaulting Airman First Class (A1C) Wheeler and A1C Wesolowski in two separate incidents. As described in detail in both the majority opinion and in the opinion of the lower court, both incidents involved fights that ensued after angry words, strained relationships, and suicide attempts by Appellant. In the first incident, A1C Wheeler testified that Appellant was the aggressor. Appellant denied striking A1C Wheeler on that occasion, and testified that she had engaged in a fight with A1C Wheeler during the same period, which had been instigated by A1C Wheeler. In the second incident, A1C Wheeler and A1C Wesolowski each testified that Appellant was the aggressor and Appellant had threatened them with a weapon. Appellant testified that A1C Wheeler was the aggressor, and that she had threatened to kill herself, not the other airmen, with the weapon.

The prosecution's primary evidence consisted of the testimony from A1C Wheeler and A1C Wesolowski. As noted in the majority opinion, the prosecution presented other evidence, including pretrial statements made by Appellant concerning her physical encounters with A1C Wheeler and her animosity for A1C Wesolowski. These statements, while significant, reflected the tumultuous interaction among the parties to the two incidents,

and did not amount to an admission of the elements of the charged offenses.

The defense position at trial was that Appellant did not initiate the physical attacks, but instead responded to physical attacks initiated by A1C Wheeler.  In that context, the testimony of a third party -- A1C Wesolowski -- was a key component of the prosecution's case, particularly on the charges growing out of the second incident, including the charge of assault with intent to commit murder.  The defense sought to undermine the credibility of A1C Wesolowski by showing that the intensity of her relationship with A1C Wheeler provided a motive to lie.

At the outset of trial, the prosecution sought through a motion in limine to exclude any evidence regarding the relationship between A1C Wheeler and A1C Wesolowski.  The military judge denied the motion and allowed the defense to explore the relationship for the purposes of demonstrating bias under Military Rule of Evidence 608(c).  At trial, A1C Wheeler and A1C Wesolowski sought to minimize their relationship, denying that there was any sexual intimacy or an ongoing homosexual relationship prior to the two charged incidents.  The defense challenged this testimony through cross-examination and the introduction of contradictory prior statements.  At best,

the evidence at trial about the nature of their relationship was inconclusive.

At a post-trial session under Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839 (2000), the defense moved for a new trial on a variety of grounds, including fraud on the court committed by the two primary witnesses against Appellant -- A1C Wheeler and A1C Wesolowski. In the motion, the defense cited newly discovered evidence of witnesses who saw the two airmen at various times sleeping in the same bed; kissing on the lips; and engaging in other displays of affection. The defense also relied upon post-trial evidence confirming Appellant's pretrial allegation that A1C Wheeler had stolen her television set. The post-trial evidence indicated that A1C Wheeler and A1C Wesolowski had taken the television and attempted to hide it in the rooms of other airmen. In addition, A1C Wheeler made a post-trial statement in which she acknowledged lying to defense counsel about the television set prior to trial because she was concerned that defense counsel would have used the incident against her and she did not want to lose what she viewed as her case against Appellant.

As noted in the majority opinion, motions for a new trial generally are disfavored. 61 M.J. at ___ (9-10). A new trial is authorized under Article 73, UCMJ, 10 U.S.C. § 873 (2000), based upon "newly discovered evidence or fraud on the court."

Under Rule for Courts-Martial (R.C.M.) 1210(f)(2)(C), the defense must show that any newly discovered evidence "if considered . . . in light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused." With respect to evidence of a fraud on the court-martial, the defense must show that the fraud "had a substantial contributing effect on a finding of guilty or the sentence adjudged." R.C.M. 1210(f)(3).

The military judge determined that the new evidence and evidence of fraud did not meet these standards, and the majority concludes that the military judge did not err. 61 M.J. ___ (11-15). I respectfully disagree.

Current military policy provides a powerful incentive to conceal or minimize a homosexual relationship. By law, a servicemember who engages in homosexual conduct or who states that he or she is a homosexual, is subject to mandatory discharge, with very limited exceptions. 10 U.S.C. § 654(b) (2000). This policy is based upon congressional findings that "[t]he presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability." 10 U.S.C. § 654(a)(15). A person who faces mandatory discharge may be retained only if he or she

4

establishes in an administrative process that the conduct was atypical under a stringent test. 10 U.S.C. § 654(b). Regardless of what decisions might be made in the future with respect to the constitutionality of that policy and related matters, see Lawrence v. Texas, 539 U.S. 558 (2003); United States v. Marcum, 60 M.J. 198 (C.A.A.F. 2004), the statute reflected well-established military policy at the time of Appellant's trial. See, e.g., Richenberg v. Perry, 97 F.3d 256, 258-61 (8th Cir. 1996); Thomasson v. Perry, 80 F.3d 915, 919-25 (4th Cir. 1996); Able v. United States, 44 F.3d 128, 130-32 (2d Circuit 1995); Thorne v. United States, 916 F. Supp 1358, 1364-67 (E.D. Va. 1996); Watson v. Perry, 918 F. Supp. 1403, 1407-10 (W.D. Wa. 1996).

Under these circumstances, both A1C Wheeler and A1C Wesolowski had a substantial stake in minimizing the intensity of their relationship. To the extent that they did so, their testimony perpetrated a fraud on the court. Such a fraud deprived the court-martial of critical testimony on the issue of bias.

In concluding that any such fraud did not have a substantial contributing effect on the finding of guilty or the sentence adjudged under R.C.M. 1210(f)(3), the majority opinion relies on evidence of incriminating pretrial statements by Appellant. 61 M.J. ___ (13-14). These statements, however, did

not constitute admissions by Appellant that she engaged in the offenses growing out of the second incident, including the charges of assault with intent to commit murder.

After noting that there were credibility issues concerning all three airmen, the majority opinion states that a "reasonable fact-finder could have concluded that all three women were lying, in varying degrees." 61 M.J. ___ (14). The mere possibility that the members could have reached such a conclusion, however, does not mean that they did so. The members necessarily concluded that A1C Wheeler and A1C Wesolowski were not lying on the basis of the evidence presented at trial, at least as to the details of the charged offenses -- a conclusion that was reached without the benefit of the evidence obtained after trial. In light of the verdict, we are not in a position to conclude that the members rejected any aspect of the testimony by A1C Wheeler and A1C Wesolowski, including their relatively benign description of their relationship. The post-trial evidence of their romantic involvement was not simply "cumulative" as suggested by the majority, but instead constituted qualitatively different information that would have substantially impeached the testimony of these witnesses on a material matter, particularly in terms of demonstrating the intensity of A1C Wesolowski's bias to lie on behalf of A1C Wheeler. See United States v. Sztuka,

6

43 M.J. 261, 268 (C.A.A.F. 1995).  The impact of bias is directly linked to the nature of a relationship.  Here, the prosecution's presentation of evidence concerning A1C Wheeler and A1C Wesolowski portrayed a friendship with mild sexual overtones, a situation involving a considerably diminished motive to lie, as compared to a sexual relationship, particularly a homosexual relationship in the armed forces.  In the absence of critical information on the intensity of the relationship, the members received a distorted presentation of evidence at trial on the question of bias by witnesses central to the prosecution.  Under these circumstances, Appellant should have been granted the opportunity to present the new evidence of bias at a new trial.