# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2022-03**

————————————

**Deric W. PRESCOTT**
Lieutenant Colonel (O-5), U.S. Air Force, *Petitioner*

**v.**

**UNITED STATES**
*Respondent*

————————————

Review of Petition for New Trial Pursuant to Article 73, UCMJ

Decided 10 June 2022

————————————

*Military Judge:* Shelley W. Schools (arraignment); Jefferson B. Brown.

*Approved sentence:* Dismissal. Sentence adjudged 30 December 2019 by GCM convened at Peterson Air Force Base, Colorado.

*For Appellant:* Frank J. Spinner, Esquire.

*For Appellee:* Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and ANNEXSTAD, *Appellate Military Judges.*

Chief Judge JOHNSON delivered the opinion of the court, in which Judge RICHARDSON and Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

JOHNSON, Chief Judge:

A general court-martial convened by the 14th Air Force commander and composed of officer members convicted Appellant, contrary to his pleas, of one specification of attempted larceny greater than $500.00 and one specification of making a false official statement in violation of Articles 80 and 107, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 907.[1] The court-martial sentenced Appellant to be dismissed from the service. The commander of Space Operations Command, United States Space Force, approved the adjudged sentence.

This court affirmed the findings and sentence on 1 April 2022. *United States v. Prescott*, No. ACM 39931, 2022 CCA LEXIS 205, at *86 (A.F. Ct. Crim. App. 1 Apr. 2022) (unpub. op.). On 30 April 2022, Petitioner filed a motion for reconsideration of this court's 1 April 2022 opinion.[2] On 2 May 2022, The Judge Advocate General's designee received the instant Petition for a New Trial pursuant to Article 73, 10 U.S.C. § 873, and forwarded it to this court for action. On 26 May 2022, the Government submitted its opposition to the petition.

We find no relief is warranted and we deny the petition.

## I. BACKGROUND

This court's prior opinion included an extensive review of the facts of Appellant's case. *Prescott*, unpub. op. at *3–19. For purposes of the instant petition, which is based on the opinions and diagnoses formed by a clinical psychologist who treated Appellant after the trial, a more limited summary of the record and filings related to Petitioner's mental health evaluations will suffice.[3]

On 8 April 2019, over six months before trial, the military judge issued an order directing an inquiry into Petitioner's mental capacity and mental responsibility pursuant to Rule for Courts-Martial (R.C.M.) 706 (referred to as a "sanity board"). The order recounted the following sequence of events: On 31 March 2019, the Defense provided notice of possible defenses of partial mental responsibility and lack of mental responsibility for the charged offenses. On 2 April 2019, the Government requested a sanity board for Petitioner. In response, on 5 April 2019 the Defense objected to the sanity board and "clarified their earlier

---

[1] Unless otherwise indicated, all references to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, United States (2016 ed.).

[2] "If the accused's case is pending before a Court of Criminal Appeals or the Court of Appeals for the Armed Forces, the Judge Advocate General shall refer the petition to the appropriate court for action." R.C.M. 1210(e). By submitting a motion for reconsideration, which remains pending, Petitioner has preserved our jurisdiction over the petition for a new trial. *See United States v. Preston*, 77 M.J. 313 (C.A.A.F. 2018).

[3] Neither party has moved to seal any of the information summarized in this opinion. However, references to medical information related to Petitioner are limited to that which is necessary for our analysis.

notice, stating that mental responsibility would not be raised as a defense. However, the [D]efense was still assessing whether [Petitioner] was suffering from a personality/character disorder that may negate specific intent." In spite of the Defense's objection and clarification, the military judge determined an inquiry pursuant to R.C.M. 706 was warranted.

The R.C.M. 706 inquiry was accomplished by a staff psychiatry resident and a staff forensic psychiatrist at the Wilford Hall Ambulatory Surgical Center Mental Health Clinic at Joint Base San Antonio-Lackland, Texas, and the board issued its "short report"[4] for the parties on 26 April 2019. The board found that at the time of the alleged offenses, Petitioner did not suffer from a severe mental disease or defect, "as defined in current Rules for Courts-Martial." The board found Petitioner "currently ha[d] the clinical psychiatric diagnoses of Major Depressive Disorder, Single Episode, Moderate and Other Specified Trauma and Stressor Related Disorder." However, the board further found that at the time of the alleged offenses Petitioner was "able to appreciate the nature and quality of his conduct and the wrongfulness," and that despite his then-current diagnoses he was "presently able to understand the nature of the proceedings against him and/or to conduct or cooperate intelligently with his defense."

Dr. MW, a forensic psychologist, was appointed to assist Petitioner's defense team for his trial held from 28 October 2019 until 8 November 2019. Dr. MW testified for the Defense during the trial as an expert in forensic psychology. He testified, *inter alia*, that "[b]ased on [his] evaluation [of Petitioner], the clinical interview, the mental status exam, the tests that [he] gave and had available to [him], and then also information from [Petitioner's] treating clinician, or their team, [Dr. MW] gave [Petitioner] a diagnosis of Hoarding Disorder with Excessive Acquisition and Generalized Anxiety Disorder." Dr. MW added that nothing he had observed during Petitioner's trial would cause him to change that diagnosis. The Defense did not assert a defense of lack of mental responsibility or partial mental responsibility at Petitioner's trial.

On 8 November 2019, the court-martial convicted Petitioner of one specification of attempted larceny greater than $500.00 and one specification of making a false official statement. After the announcement of findings, the military judge recessed the proceedings until 30 December 2019, when the presentencing proceedings took place and Petitioner was sentenced.

---

[4] *See* R.C.M. 706(c)(3) (distinguishing between the more detailed "long report"—generally releasable only to medical personnel for medical purposes, to the defense, and, upon request, to the accused's commander—and the more widely releasable but narrowly focused "short report").

Petitioner did not raise a question of his mental responsibility in the extensive matters he submitted to the convening authority pursuant to R.C.M. 1105 before the convening authority approved the sentence on 30 June 2020. Similarly, Petitioner did not raise a question of his mental responsibility in the assignments of error he filed with this court on 20 May 2021.

Petitioner has submitted two documents in support of his petition for a new trial. One of these is a declaration dated 29 April 2022 from Petitioner himself summarizing his recollection of the "mental health treatment" he received from 2005 through the present time. The second document is a declaration dated 28 April 2022 from Dr. SG, a clinical psychologist who has been treating Appellant since 13 January 2021. Dr. SG's declaration constitutes the essential basis for the petition and warrants describing in some depth.

Dr. SG stated his current diagnoses for Petitioner include "Post Traumatic Stress Disorder; Obsessive Compulsive Disorder; [and] Major Depressive Disorder, Recurrent, moderate." Dr. SG based his diagnoses on the following: his "direct clinical assessment and observations of [Petitioner] (Currently seen on a weekly basis);" his "review of records from [Petitioner's] previous therapist" at the same clinic where Dr. SG practices, beginning 27 February 2020; his "[r]eview of inpatient psychiatric records" from Petitioner's treatment at a Colorado hospital for approximately two months in November and December 2019; and his "[r]eview of the Sanity Board Long Report for [Petitioner] dated 25 April 2019." Dr. SG explains:

> It is my understanding that the psychologist who testified as a Defense Expert at [Petitioner's] court-martial did not diagnose [Petitioner] with Post Traumatic Stress Disorder and did not treat [Petitioner] as a patient. He served as a forensic consultant to the Defense, not as a treating psychologist.
>
> In my time treating [Petitioner], I have had the ability to see and assess him on a continual, consistent basis. Throughout these clinical interactions, I have formulated an understanding of his unique and idiosyncratic personality structure. He is an individual ardent to order, law and rules. He is someone that is quite literal and concrete in his thinking process and in his understanding of rules and procedures. He is also an individual beholden to sentimentality and items from his past that represent emotional traumas and difficulties from differing periods of his formative years. Because of these traumas, he formed attachments with possessions.

Taking into consideration the entirety of his clinical record, including my conceptualization of his characterological and personality structure, I offer these conclusions:

1. [Petitioner] suffers from Post Traumatic Stress Disorder and demonstrates a complex demonstration of this disorder. . . .

2. [Petitioner] also suffers from Obsessive Compulsive Disorder, which manifests in his tendency to accumulate and adhere to and connect with items and possessions that have any and all emotional significance for him. . . .

3. [Petitioner] is someone who strictly and concretely interprets rules, procedures, and guidelines.

4. It is my clinical opinion that at the times in 2017 and 2018 when the offenses were allegedly committed, [Petitioner] did not have the ability to form specific intent to commit crimes of the nature to which he has been accused and found guilty. This is based on my complete understanding of his clinical history and his personality structure.

## II. DISCUSSION

### A. Law

A petitioner may petition for a new trial "on the grounds of newly discovered evidence or fraud on the court." Article 73, UCMJ, 10 U.S.C. § 873. A new trial shall not be granted on the grounds of newly discovered evidence unless the petition shows that:

> (A) The evidence was discovered after the trial;
>
> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
>
> (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

R.C.M. 1210(f)(2); *see United States v. Luke*, 69 M.J. 309, 314 (C.A.A.F. 2011); *United States v. Johnson*, 61 M.J. 195, 198 (C.A.A.F. 2005). "[R]equests for a new trial . . . are generally disfavored," and are "granted only if a manifest injustice would result absent a new trial . . . based on proffered newly discovered evidence." *United States v. Hull*, 70 M.J. 145, 152 (C.A.A.F. 2011) (quoting *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)).

Appellant's conviction for attempted larceny of money of a value greater than $500.00 in violation of Article 80, UCMJ, required the Government to prove: (1) that Appellant did a certain overt act, that is, filed a household goods claim which included items for which he was not entitled to payment; (2) that the act was done with the specific intent to commit a certain offense under the code, specifically larceny of money of a value greater than $500.00 from TMM (Total Military Management); (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense except for TMM personnel discovering similarities between Appellant's 2017 claim and his 2011 and 2014 claims. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 4.b. The elements of larceny in violation of Article 121, UCMJ, 10 U.S.C. § 921, include: (1) that the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person; (2) that the property belonged to a certain person; (3) that the property had a certain value; and (4) that the taking, obtaining, or withholding was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner. *MCM*, pt. IV, ¶ 46.b.(1).

Appellant's conviction for making a false official statement in violation of Article 107, UCMJ, 10 U.S.C. § 907, required the Government to prove: (1) that Appellant signed a certain official document or made a certain official statement; (2) that the document or statement was false in certain particulars; (3) that Appellant knew it to be false when he signed or made it; and (4) that the false document or statement was made with the intent to deceive. *See MCM*, pt. IV, ¶ 31.b.

R.C.M. 916(k) provides, in pertinent part:

> (1) *Lack of mental responsibility*. It is an affirmative defense to any offense that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts. Mental disease or defect does not otherwise constitute a defense.

> (2) *Partial mental responsibility*. A mental condition not amounting to a lack of mental responsibility under subsection (k)(1) of this rule is not an affirmative defense.

The Discussion section following R.C.M. 916(k)(2) explains: "Evidence of a mental condition not amounting to a lack of mental responsibility may be admissible as to whether the accused entertained a state of mind necessary to be proven as an element of the offense."

6

**B. Analysis.**

Petitioner asserts that Dr. SG's expert opinion constitutes newly discovered evidence that warrants a new trial pursuant to Article 73, UCMJ. Petitioner "does not now claim a lack of mental responsibility and does not dispute the findings of the sanity board to the extent they found mental responsibility at the time of the alleged offenses." However, Petitioner asserts Dr. SG's declaration would support a "partial mental responsibility" defense in that Petitioner lacked the specific intent required to commit either the attempted larceny offense or the false official statement offense for which he was convicted. Petitioner asserts that if this new evidence had been presented at trial, "it is reasonable to conclude . . . a substantially more favorable result would have probably been produced." We find Petitioner has failed to meet his burden to demonstrate a new trial is necessary to avoid manifest injustice.

As an initial matter, we accept that the newly discovered evidence—specifically, Dr. SG's opinion—was discovered after trial. According to Dr. SG, he did not begin treating Petitioner until more than a year after Appellant's court-martial concluded.

In addition, we will assume without deciding that the "newly discovered evidence" was not such that it would have been obtainable before trial in the exercise of due diligence by the Defense. The Government contends, with some persuasiveness, that Petitioner has failed to demonstrate that the condition Dr. SG now asserts affected Petitioner's ability to form specific intent in 2017 and 2018 was not reasonably discoverable before Appellant's trial in late 2019. However, for purposes of our analysis, we will accept that the "newly discovered evidence"—defined as Dr. SG's personal diagnoses and opinion—were not available before Dr. SG began treating Petitioner after the court-martial.

However, we conclude Petitioner has failed to demonstrate Dr. SG's opinion, "if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result" for Petitioner. We reach this conclusion for several reasons.

First, we note Dr. SG's opinion is vague, conclusory, and lacking in any persuasive explanatory detail.

Second, Dr. SG's opinion on the relevant point—Petitioner's ability "to form specific intent to commit crimes of the nature to which he has been accused and found guilty"—is a legal conclusion for which Dr. SG's declaration provides an inadequate foundation. Dr. SG states his understanding that Petitioner was convicted of "attempted larceny and making a false official statement," offenses which "require proof of specific intent," and that "under military law, partial mental responsibility is recognized as a potential defense in cases where specific intent is an issue." However, Dr. SG does not demonstrate knowledge of

the elements of these offenses nor, more significantly, the nature of the attempted larceny and false official statement for which Petitioner was convicted. As written, Dr. SG's declaration suggests Petitioner—an otherwise successful judge advocate and field grade Air Force officer—suffered from a mental condition that made him categorically incapable of committing the offenses of attempted larceny or false official statement. In light of the record of Petitioner's court-martial, we do not find this assertion at all persuasive.

Third, Dr. SG's declaration does not indicate he has any familiarity with the record of Petitioner's trial or the evidence in the case. This apparent lack significantly undermines the persuasiveness of Dr. SG's opinion. As detailed in this court's prior opinion, a rational factfinder could find numerous points at which Petitioner demonstrated deceptiveness and consciousness of guilt with respect to the offenses for which he was convicted, implying knowledge of the wrongfulness of his acts.

Fourth, and in contrast, Petitioner's trial defense counsel and expert consultant, Dr. MW, *were* familiar with the evidence in the case and the elements the Government was required to prove, including the specific intent requirements. Moreover, they had access to Petitioner before the court-martial in order to prepare for the trial. Knowing the elements, and with the ability to fully confer with Petitioner about his state of mind at the time of the alleged offenses, the Defense elected not to challenge either Petitioner's mental responsibility generally nor his ability to form the required specific intent. In other words, those who were well-informed of the evidence, had access to expert forensic psychological advice, and were charged with defending Petitioner's legal interests did not perceive the deficiencies Dr. SG now asserts years after the fact.

Accordingly, Petitioner has failed to demonstrate the newly discovered evidence requires a new trial in order to avoid manifest injustice.

### III. CONCLUSION

The Petition for a New Trial is **DENIED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court