# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————

**Misc. Dkt. No. 2020-06**

————————

**Soren G. GERE**
Technical Sergeant (E-6), U.S. Air Force, *Petitioner*

**v.**

**UNITED STATES**
*Respondent*

————————

Petition for New Trial Pursuant to Article 73, UCMJ

Decided 12 January 2021

————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Dishonorable discharge, confinement for 10 years,

and reduction to E-1. Sentence adjudged 23 January 2019 by GCM convened at Wright-Patterson Air Force Base, Ohio.

*For Petitioner:* Captain Matthew L. Blyth, USAF.

*For Appellee:* Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges.*

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————

ANNEXSTAD, Judge:

Contrary to his pleas, Petitioner was convicted at a general court-martial composed of a military judge sitting alone of one specification of attempted sexual assault of a child, one specification of sexual abuse of a child, and one spec-

ification of sexual assault of a child, in violation of Articles 80 and 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 920b.[1,2] The military judge sentenced Petitioner to a dishonorable discharge, confinement for ten years, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged. On 24 November 2020, we completed our review of Petitioner's case under Article 66, UCMJ, 10 U.S.C. § 866, and found no error materially prejudicial to a substantial right of Petitioner and affirmed the findings and sentence.[3] *See United States v. Gere*, No. ACM 39697, 2020 CCA LEXIS 429 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.).

While his appeal was pending before this court, Petitioner petitioned The Judge Advocate General of the Air Force for a new trial pursuant to Article 73, UCMJ, 10 U.S.C. § 873. In accordance with Rule for Courts-Martial (R.C.M.) 1210(e), the petition was referred to this court and docketed on 18 November 2020. Respondent submitted an answer to the petition on 16 December 2020, and Petitioner replied to Respondent's answer on 23 December 2020.

Petitioner asserts that he is entitled to a new trial based on newly discovered evidence that SN, the victim in his case, allegedly falsely reported an unrelated sexual assault approximately one year before Petitioner's trial. Finding no such relief is warranted, we deny the petition.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M), and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] The specification of attempted sexual assault of a child was a lesser included offense of Specification 3 that alleged sexual assault of a child of which the military judge found Petitioner not guilty. Also, the military judge dismissed Specification 1, sexual abuse, on the condition that Specification 2, sexual assault of a child, and Specification 3, attempted sexual assault of child, are affirmed on appeal. The military judge also merged Specifications 2 and 3 at sentencing, resulting in a maximum term of confinement of 30 years.

[3] During our Article 66, UCMJ, review, we noted two errors in the court-martial order (CMO), not raised by the parties on appeal. First, the charged article was incorrectly identified as Article "120" rather than "120b." Second, the third specification was incorrectly identified as "Specification" without enumeration as "Specification 3." In our 24 November 2020 opinion, we directed the publication of a corrected CMO to remedy these errors.

## I. BACKGROUND[4]

In September 2016, Petitioner was a recruiter stationed at Wright-Patterson Air Force Base (AFB), Ohio. At that time, SN was a 13-year-old girl who lived with her mother, JR, near Wright-Patterson AFB. SN's mother and father were separated, and her father lived in California. Petitioner had been dating JR for about a year and SN would interact with Petitioner several times each week.

On the weekend of 10 September 2016, SN and her mother went to Petitioner's house near Beavercreek, Ohio. At his house, Petitioner provided SN with multiple alcoholic drinks. Over the course of the evening, SN consumed both beer and mixed drinks. SN testified that she did not recall exactly how many alcoholic drinks she consumed that evening, but knew it was more than two, and she felt tipsy and drunk. Throughout the night, SN took videos of herself on her cellular phone in an intoxicated state, 38 of which were admitted into evidence at trial. At some point, SN recalled that Petitioner walked her over to his bed and gave her a small pill. Petitioner told SN the pill would help her sleep. SN understood that Petitioner and her mother were going out to a local bar. After Petitioner and JR left, SN fell asleep in Petitioner's bed.

The next thing SN recalled was waking up when Petitioner and her mother returned from the bar. SN testified that she "was drunk and . . . really couldn't get up or really move." She stated that Petitioner laid down next to her in the bed and that her mother was laying on the other side of Petitioner, not immediately next to her. SN testified that Petitioner placed his hand up her shirt and under her binder[5] before touching "both" of her breasts. She further testified that Petitioner pulled her underwear down and "put his fingers inside of [her]." As this was happening, Petitioner told SN "not to tell anyone." SN testified that she tried to mumble "stop" under her breath, but the words would not come out because she was in "shock." SN testified that while Petitioner touched her he was kissing her neck and mouth. SN testified that Petitioner smelled like alcohol and cigarettes and that she felt "repulsed" by what was happening. SN testified that while laying on her side, with her back to Petitioner, she felt Petitioner's erect penis against her buttocks. SN then stated that she felt his penis around her vagina and that while this was happening

---

[4] It is necessary to repeat facts from this court's opinion in *United States v. Gere*, No. ACM 39697, 2020 CCA LEXIS 429, at *2–4 (A.F. Ct. Crim. App. 24 Nov. 2020) (unpub. op.), to resolve the petition.

[5] At trial, SN testified that a "binder" is a piece of clothing used by individuals to "bind" their breasts down. SN stated that her binder was made of cotton and had multiple hooks on the back to keep it closed.

Petitioner was "breathing" on her and "thrusting" and "jerking" his body. SN testified that she felt his penis touching her vagina, but it did not go inside. SN tried to get up but Petitioner held her down by placing his hand on her stomach.

SN was finally able to get away and went to the kitchen near the living room. Petitioner followed her to the kitchen and slightly shoved her, while asking her what was wrong. SN did not respond, and went to the living room to sleep on the couch, while Petitioner returned to his bedroom. SN testified that she could not sleep and spent most of the night crying.

The following morning, Petitioner drove SN and her mother home. SN testified that she did not immediately tell her mother what happened because she thought her mother "wouldn't believe [her]." Later that day, SN told her friend, EH, that her "mom's boyfriend raped" her. That same night, SN had a conversation with another friend, JE, and was in tears as she told JE that she had been drinking with her mom and her boyfriend, and that her mom's boyfriend came in the room, got on top of her, and raped her. Both of her friends encouraged her to report the incident, but SN refused because she was worried her mother would get in trouble for allowing her to drink alcohol.

The following Monday at school, SN testified that she told several other friends about the assault. All of SN's friends encouraged her to report the assault; however, SN chose not to. After school, one of SN's friends, JE, told her mother, who immediately reported the assault to Child Protective Services. Subsequently, a social worker and civilian law enforcement officer were dispatched to SN's house. JR initially met with police and asked for a lawyer, and also asked to speak to SN in private. During their private conversation, JR told SN not to tell the police about the alcohol.

After speaking with police about what had happened, SN agreed to go to the hospital, where she underwent a sexual assault forensic examination (SAFE). As part of the examination, deoxyribonucleic acid (DNA), fingernail scrapings, and a head hair sample were collected, and buccal swabs were taken from SN. While at the hospital, SN also provided a urine sample. In November, 2016, SN went to live with her father in California, where she was still living at the time of Petitioner's court-martial.

At trial, the Government called TA, a forensic scientist from the Ohio Bureau of Criminal Investigation. The court recognized TA as an expert in the field of forensic DNA analysis. TA testified that he examined the SAFE kit from SN, which included oral and vaginal samples, fingernail scrapings, a head hair sample, and skin swabs from her pubic area. TA further testified that "a low amount of male DNA" was found on the pubic area samples taken from

SN, but due to the small amount of DNA present, a DNA profile could not be produced, which meant the sample could not be linked to any particular male.

During trial, the Government also called HA, a toxicologist from the Coroner's Office Crime Lab in Troy, Ohio. The court recognized HA as an expert in the field of toxicology. HA testified that SN's urine sample showed traces of ibuprofen and diphenhydramine—the active ingredient found in over-the-counter sleep aid medication. HA testified that subsequent confirmation tests did not detect diphenhydramine above the lab's cut-off level of six nanograms per milliliter in SN's urine sample.

Petitioner's trial concluded on 23 January 2019. In his appeal, which we reviewed pursuant to Article 66, UCMJ, Petitioner argued that his convictions were legally and factually insufficient, largely based on his claim that SN was not a credible witness. Specifically, Petitioner argued that SN lied about her deletion of a Snapchat message, made multiple inconsistent statements, and had a motive to lie. On 24 November 2020, we affirmed the findings and sentence.

## II. DISCUSSION

### A. Additional Background

Petitioner's request for a new trial is based on a claim of newly discovered evidence. Specifically, Petitioner claims that SN made a false unrelated report of sexual assault that occurred on 15 November 2017—after the date of Petitioner's assault offense against SN but prior to his court-martial—when an unknown student at her middle school grabbed her buttocks in the school lunch line. Petitioner alleges that this incident was investigated but no charges resulted.

In support of his petition, Petitioner attached a police report dated 22 November 2017. The police report indicates that SN reported that her "butt crack was grabbed from behind in lunch line twice." The report further indicates SN did not see who grabbed her, there were approximately ten boys standing behind her, and there were no witnesses who recalled seeing anyone grab SN. The police report does not state or imply that SN falsely reported the sexual contact.

Petitioner also attached a "cease and desist" letter, dated 11 May 2020, to his petition that was sent to SN's father, MN, from the school board demanding that MN stop making allegations that the school board "covered up a sex crime" in 2017 and that the school district had "threatened" him if he continued to voice his concerns. The letter highlights the school board's frustrations with MN's persistent complaints that SN's report of sexual assault was not handled

appropriately by the school and states that SN's complaint was fully investigated and closed due to lack of evidence.

Petitioner also attached declarations from his trial defense counsel concerning their knowledge of the incident at school. While Petitioner acknowledges that he was aware before his court-martial that SN's father, MN, had removed SN from her middle school in California in December 2017, he states that he was unaware of the alleged assault in the lunch line and the ensuing investigation. His trial defense counsel also confirmed in their declarations that they were similarly aware that MN removed his daughter from school, but unaware of the alleged assault. Trial defense counsel stated that they asked SN and other witnesses about her removal from school, but they did not state that they asked MN about the matter. The witnesses who were questioned by trial defense counsel had no information to provide on the school incident. Additionally, trial defense counsel do not state in their declarations whether they ever asked SN if she had made other allegations of sexual assault. Petitioner's court-martial occurred more than a year after SN's report of the unrelated sexual contact at school.

Petitioner now claims that had he been aware of the report—which he contends was a false allegation—that he would have been in a better position to challenge SN's and MN's credibility and motives, and that this probably would have resulted in a substantially better result at trial. We disagree.

**B. Law**

A petitioner may request a new trial "on the grounds of newly discovered evidence or fraud on the court." Article 73, UCMJ, 10 U.S.C. § 873. A new trial shall not be granted on the grounds of newly discovered evidence unless the petitioner shows that:

> (A) The evidence was discovered after the trial;
>
> (B) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and
>
> (C) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused.

R.C.M. 1210(f)(2); *see United States v. Luke*, 69 M.J. 309 (C.A.A.F. 2011); *United States v. Johnson*, 61 M.J. 195, 198–99 (C.A.A.F. 2005).

To show that a new trial is warranted, "[t]he burden is heavier than that borne by an appellant during the normal course of appellate review." *United*

*States v. Bacon*, 12 M.J. 489, 491 (C.M.A. 1982) (citations omitted). "[T]he provisions of Article 73[, UCMJ,] are not designed to permit an accused to relitigate general matters which were . . . decided adversely to him." *Id.* at 492 (citations omitted). Thus, "'requests for a new trial . . . are generally disfavored,' and are 'granted only if a manifest injustice would result absent a new trial . . . .'" *United States v. Hull*, 70 M.J. 145, 152 (C.A.A.F. 2011) (quoting *United States v. Williams*, 37 M.J. 352, 356 (C.M.A. 1993)).

"[T]he determination of sufficient grounds for granting a petition for new trial in the military rests 'within the [sound] discretion of the authority considering . . . [that] petition.'" *Bacon*, 12 M.J. at 492 (alterations in original) (citations omitted). Accordingly, it is this court's prerogative to weigh the testimony at trial against the post-trial evidence to determine which is credible. *Id.* We are also free to exercise our fact-finding powers. *See id.* (citations omitted). The only limit on our fact-finding powers is that our "broad discretion must not be abused." *Id.* (citing *United States v. Thomas*, 11 C.M.R. 161, 166 (C.M.A. 1953)).

**C. Analysis**

Petitioner has failed to meet his burden to demonstrate that he is entitled to a new trial. Petitioner has not demonstrated that the evidence could not have been discovered before trial in the exercise of due diligence, and also fails to show that the evidence would have probably produced a substantially more favorable result.

Petitioner's trial defense counsel both acknowledge they were aware that SN was removed from school in December 2017. They also acknowledged that they interviewed SN and MN before trial. Neither trial defense counsel state that they asked either one if SN had been the victim of any other assault, if they had been involved in any other criminal investigations, or if they had filed any other police reports. While trial defense counsel state that they asked multiple witnesses about the change in school, they do not allege that any witness lied or refused to answer their questions. Furthermore, both trial defense counsel acknowledge that they had the opportunity to ask the military judge to order production of any records that were outside the possession of the Government, but chose not to make such a request because they did not believe that they could demonstrate such documents were relevant and necessary based on the limited information they had. The Defense also had access to SN's mother, JR, who spoke with SN on occasion between November 2017 and commencement of Petitioner's trial. There is no evidence that trial defense counsel ever asked JR about the circumstances surrounding SN's abrupt removal from school.

Given that trial defense counsel failed to state that they asked MN—the individual who disenrolled SN—any questions that might have produced more information, Petitioner's counsel did not pursue available investigative leads. Trial defense counsel knew SN had been removed from the school, but apparently did not attempt to discern the reasons for her removal. Even at this stage, Petitioner has failed to demonstrate that any witness lied or refused to answer related questions, or that SN or MN intentionally tried to conceal the unrelated report of sexual contact at SN's school. Petitioner had the tools of discovery and production available to him at trial, yet he did not avail himself of those rights. Considering the foregoing, we conclude that Petitioner has failed to demonstrate that the evidence could not have been discovered at the time of trial by the exercise of due diligence.[6]

Petitioner's primary argument for a new trial revolves around the fact that the evidence might "undermine SN's credibility and support alternate theories for the defense." However, even if we found that Petitioner's counsel had exercised due diligence with respect to this evidence, Petitioner has failed to demonstrate that it would have been admissible at trial. "Evidence of an alleged victim's prior accusation of sexual assault is only admissible if the prior accusation is shown to be false." *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017). Petitioner has not demonstrated SN's reported assault in the lunch line was actually false, as opposed to simply inconclusive or unprovable. The absence of evidence corroborating her account is not the same as evidence refuting her account, and we have been provided nothing falling into that latter category. If Petitioner could not demonstrate SN's report was in fact false, we see little or no relevance to the report at all, and we are unconvinced the evidence would have been admissible if proffered. Without a showing that the evidence would be admissible, or the line of inquiry permissible, Petitioner cannot show that the evidence would have produced a substantially more favorable result. *See United States v. Curtis*, 1995 CCA LEXIS 221 at *4 (A.F. Ct. Crim. App. 29 Aug. 1995) (unpub. op.) ("It would be incongruous to grant a new trial if defense counsel could not then introduce the 'newly discovered evidence.'").

Furthermore, Petitioner has failed to show how this evidence could be used to impeach SN. SN's testimony at trial regarding the offenses Petitioner was convicted of was corroborated by both outcry witnesses and physical evidence. Video evidence showed that SN was provided alcohol, a toxicology screen provided evidence that she was given sleeping medication, and DNA analysis

---

[6] Petitioner has not raised that his trial defense counsel were ineffective and we do not see the issue reasonably raised in the record. *See United States v. Gooch*, 69 M.J. 353, 361–62 (C.A.A.F. 2011).

showed that male DNA was found near her vaginal area. While Petitioner argues that "SN's credibility" was crucial, and therefore a new line of cross-examination would yield a more favorable result, his argument is unpersuasive because the evidence Petitioner seeks to use to impeach SN is not related to any material matter in the court-martial. Petitioner has offered no theory for how this alleged incident at SN's school, after SN was already living with her father, advances the defense theory raised during trial that SN fabricated an assault against Petitioner so that she could live with father in California.

Now Petitioner asserts a new theory that MN was "manipulating his daughter's false allegations for personal gain." But this line of questioning would only go towards MN's reactions to the allegations and would not impugn the credibility of SN's initial reports or her testimony at trial. We also note that MN played only a minor role at trial. He was appointed by the military judge as SN's guardian and did not testify about the merits of the allegations. There was no evidence presented at trial that MN conspired with SN to make false allegations, nor does Petitioner provide any evidence of such a scheme in his petition for a new trial. We do not see the nexus between MN's limited testimony in the case and the strength of the Government's evidence.

Finally, Petitioner's trial defense counsel indicated that they would have used the evidence of the reported sexual assault to counter evidence at sentencing that SN was at risk of psychological harm from Petitioner's actions. However, Petitioner was sentenced by a military judge, and we are not convinced that a military judge would believe that SN suffered significant harm from her buttocks being touched in a school lunch line, as compared to being drugged and digitally penetrated by an adult authority figure in her life. Therefore, we conclude Petitioner has failed to demonstrate that this evidence would be admissible, how this "new evidence" would be used to impeach SN as to a material matter, and most significantly, that this "new evidence" would probably produce a substantially more favorable result for Petitioner.

### III. CONCLUSION

Petitioner's petition of 10 November 2020 for a new trial pursuant to Article 73, UCMJ, is **DENIED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court